O'DELL v. DAY.

1. REPLEVIN—FIXTURES—RIGHT TO POSSESSION—DIRECTED VERDICT.
    In an action of replevin for machinery removed from a grape juice plant by defendant, mortgagor, where the evidence was undisputed that the mortgages upon the farm, the foreclosure of which gave plaintiff the right to possession of the realty, did not cover the personal property, which was in no way affixed to the freehold, and that, on the day the writ of replevin was issued, as between plaintiff and defendant, defendant was entitled to the possession of the property, a verdict should have been directed in his favor.

2. SAME—CORRESPONDENCE—ADMISSIONS—EVIDENCE—TITLE TO PERSONALTY—RIGHT TO POSSESSION.
    Correspondence between plaintiff and defendant, after the foreclosure of the mortgages, in which defendant apparently admitted plaintiff's ownership of the personal property, cannot be construed as a surrender either of title or the right to possession of the property by the defendant.

Error to Van Buren; Tucker, J., presiding. Sub-

mitted January 17, 1918. (Docket No. 122.) Decided March 27, 1918.

Replevin by Benjamin F. J. O'Dell against James Ingersoll Day. Judgment for plaintiff. Defendant brings error. Reversed.

*W. J. Barnard,* for appellant.

*Glenn E. Warner,* for appellee.

The defendant was the owner of a farm of 85 acres in the county of Van Buren upon which there was located a grape juice plant. Prior to 1912 he had executed three several mortgages covering said land to the First State Bank of Decatur. On June 7, 1912, he executed to plaintiff a fourth mortgage in the sum of $8,000 covering the same property. After describing the real estate embraced within the terms of the mortgage the instrument proceeds:

"To have and to hold the same, together with all and singular the tenements, hereditaments, privileges and appurtenances thereunto belonging, or in any wise appertaining; and also, all the estate, interest, and claim whatsoever, in law as well as in equity, which the said party of the first part has in and to the premises hereby conveyed, unto the said party of the second part, his heirs and assigns, and to their only proper use, benefit, and behoof forever."

One of the mortgages given to the First State Bank of Decatur was foreclosed by the bank and redemption from said foreclosure was effected by the plaintiff on the 14th day of December, 1915. On December 15th, defendant wrote the plaintiff as follows:

"*My Dear Mr. O'Dell:* I understand from Warner that you have redeemed the mortgage. I regret very much that I could not do it myself. As you are now the owner of the property I want you to know that I am now making every preparation and effort to leave as quickly as possible and in the meantime will protect

the property the same as if it was my own. I am glad that you were able to protect your interest besides relieving my bondsmen.

"Yours very respectfully, ·
"JAMES INGERSOLL DAY."

A second letter, undated in the record, follows:

*"My Dear Mr. O'Dell:* As I told you this afternoon I am anxious to go away and let matters stand for a few days and will assure you that in my absence nothing will be done one way or the other. I would like very much to have an authority from you to give a neighbor full charge in my absence of what consists of the entire property.

"With sincere personal regards I am,
"Yours very respectfully,
"JAMES INGERSOLL DAY."

And later a third letter:

"DECATUR, MICHIGAN, December 23, 1915.
*"My Dear Mr. O'Dell:* I am in receipt of your letter and have turned it over to a responsible party giving him full authority to order any one off the place in my absence. I have also seen Mr. Wood and told him that I have nothing to report and that matters should remain as they are until my return, which he said would be O. K. I told him my agreement with you and I had nothing to say as I felt I needed a rest assured that matters will rest just as I said they would until my return. You will hear from me shortly either in person or by letter and it is my wish and hope that matters can be arranged to the satisfaction of all.

"With sincere personal regards, I am,
"Yours very respectfully,
"JAMES INGERSOLL DAY."

It appears that at the time the $8,000 mortgage was executed by defendant to plaintiff, the grape juice plant was equipped with machinery. It further appears that some new machinery was purchased by defendant on contract some two years later, in 1914. Shortly after the correspondence above set forth, defendant, who apparently still remained in possession of the farm

and plant, undertook to, and did, remove from said plant practically all the machinery and appliances used in the manufacture of grape juice and located in said plant. Much of the machinery was very heavy and it required some days to accomplish its removal from Decatur to Lawton. As soon as plaintiff learned of defendant's acts in the premises, he caused to be issued a writ of replevin covering the property so removed. Much of the property covered by the writ was recovered and returned by plaintiff to the plant at Decatur. Some property was not recovered. It is asserted by plaintiff's counsel, though upon this point the record is silent, that plaintiff since the institution of this suit, has adjusted the claims of the vendors of such machinery and appliances as were held by defendant under contract or lease. The case was tried before a jury who rendered a verdict in favor of the plaintiff and assessed plaintiff's damages, by reason of the expense incurred in returning the property to the possession of the plaintiff, and damages resulting from failure to find and return property to which plaintiff had the right of possession, at the sum of $624. A motion for a new trial having been made, the court refused the same on condition that plaintiff remit $400 from his recovery.

BROOKE, J. (*after stating the facts*). The real question involved in this case is whether the plaintiff, on the day the writ of replevin was issued, was entitled to the possession of the property taken upon the writ. Recognizing this, the learned circuit judge charged the jury in part as follows:

"2. One of the questions in the case is whether or not all of the equipment of the factory is to be treated as real estate and covered by O'Dell's mortgage. Or, if not all of it, then what portion of it shall be so treated.

"3. So far as the rule applicable to this question is concerned, property thoroughly fastened to real estate

has been often treated by the courts as personalty, and property quite detached from the real estate has been treated by the courts as real estate, because essential to the operation of the property or plant mortgaged, and because of such an arrangement having been made between the parties. I think the rule to be applied to any given case may be arrived at by an answer to the question: What was the intent of the parties to the case being tried as to its treatment?

"4. And in this case you will ask yourselves this question: What did these parties intend, when the $8,000 mortgage was executed; what was to be the rule as to the treatment of the property placed in the factory that was to be erected, by an understanding between the parties, upon this 85 acres of land in question? And when you have arrived in your own minds as to what you believe the intentions of these parties were, that is the end of your consideration of that proposition. If they intended that all the equipment of the factory was to be treated as a part of the real estate, and property covered by the mortgage, then the defendant in this case cannot be heard to say that he did not own the property and that some one else did own it, as against the man to whom he gave the mortgage.

"5. If the understanding was that all the equipment of this factory was to be treated as a part of the building (as real estate, in other words) and was to be covered by this mortgage, then you are to treat it all as covered by the mortgage and render a verdict for the plaintiff as to all the property taken on the writ, except such as you may find to have been taken, if any, that was not intended to be a part of the equipment or covered by the understanding of the parties in the case; bearing in mind that unless you are satisfied by a preponderance of the evidence that it was to be treated as covered by the mortgage you will find for the defendant as to all property owned by him that was not fastened to the real estate, or a part of it."

Defendant assigns error thereon.

The record, we think, shows without dispute that the property described in the writ of replevin was

personal property in no way affixed to the freehold. Neither the plaintiff nor the defendant nor any witness for either party testified that in loaning the money, either the bank who took the first three mortgages, or the plaintiff who took the fourth, had any agreement, either verbal or written, with defendant that the mortgage should cover the personal property used in the grape juice plant; nor does it appear that the money was advanced by either of the mortgagees to the mortgagor for the purpose of purchasing equipment for the plant. Neither the mortgage given to the bank which was foreclosed by the bank and from which redemption was made by the plaintiff, nor the mortgage running to the plaintiff himself, contains any intimation that the security covers any personal property. So far as the situation is disclosed by the evidence in this record, it is, we think, plain, that as between plaintiff and defendant, on the day the writ was issued, the defendant was entitled to the possession of the goods replevined. Counsel for plaintiff seem to place some reliance upon the correspondence quoted above. We do not think these letters can be construed as a surrender either of title or the right to possession of the property by the defendant. As we view this record, there was no evidence tending to show that either the plaintiff's mortgage or that given by defendant to the bank which was foreclosed, covered the property in question, it was therefore error to submit that question to the jury. The court should, as requested by counsel for defendant under the testimony as it then stood, have directed a verdict in favor of the defendant.

The judgment is reversed, with costs, and a new trial ordered.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, FELLOWS, STONE, and KUHN, JJ., concurred.