Nelson Roberts v. Cyrus Miles and others.

*Effect of answer in chancery as evidence: examination of defendant as a witness.*
Where an answer in chancery is called for on oath, and the defendant of his own knowledge fully and fairly negatives any allegation of the bill, complainant can have no relief depending upon that allegation, unless the answer is overcome by more than the equally full testimony of one witness.

But this rule amounts simply to this : that there can be no decree in favor of complainant unless the evidence preponderates in his favor; and that where answer and opposing witness are equally fair and explicit, there can be no such preponderance.

If defendant, after having thus answered, is called upon the stand as a witness under the statute, of 1861 (p. 168), and furnishes the means of destroying his own answer, and corroborating complainant's case, his testimony on the oral examination and cross-examination is preferable to his answer.

Since said statute the defendant's answer on oath, responsive to the bill, is to be regarded as of the same force only which it would have were it the defendant's deposition as a witness.

*Defense precluded by judgment.*—Where one is induced to become indorser of a note by the statements of the payee that it is mere matter of form, and he will not be troubled about it, and afterwards suit is brought on the note, and he makes no defense, and judgment is obtained, he is thereafter precluded from claiming that the judgment is not binding upon him.

*Indorser discharged by conduct of holder.*—But where, after the judgment, statements to a similar effect were made, under such circumstances as to justify the indorser in believing and acting upon them, and in supposing he was not liable, and he was thereby induced to abstain from securing himself when he might easily have done so, until the maker became insolvent, and an execution was then levied upon his property, it was held that he was entitled to a perpetual injunction.

*Heard January 7th and 8th. Decided April 19th.*

12 MICH.—T.

Appeal in chancery from St. Clair Circuit. The facts are stated in the opinion.

*Crellin & Atkinson* and *A. B. Maynard*, for complainant:

1. The assignment to Miller, as affecting Roberts, is the same as if made to Miles & Co. If he, being a member of the firm, accepts securities for the payment of a debt due to them, but applies them to a different purpose, Roberts in equity and justice should be discharged.

2. Putting the claim into judgment does not affect the equitable rights of Roberts to be discharged therefrom:—2 *Lead. Cas. in Eq.* 566, 567 *and cases cited.*

3. It is well settled that if a creditor surrenders up or releases any sureties of the principal, whether acquired by proceedings instituted against him, or voluntarily placed in his hands, then, to the value of such securities, the surety is discharged. The same result would follow if a wrongful application should be made:—8 *S. & R.* 453; 8 *Pick.* 121; 2 *Amer. Lead. Cas.* 343.

Whatever funds came into the hands of Miller, as such assignee, to be applied in payment of the individual debts of Bailey and Bancroft to Cyrus Miles & Co., should have been applied equally on their several indebtedness, and no different application could properly be made without the consent of both Bailey and Roberts. Upon every principle of equity and justice, Roberts should be discharged from the judgment, to the extent, at least, of the monies which Miller should have paid thereon.

4. Roberts evidently placed full confidence in the statement of Miles, that the judgment was satisfied. After that he took no measures for his own protection, though Bailey had then, and for some time afterwards, personal property subject to levy, sufficient to have satisfied the judgment. This, we claim, discharges Roberts, and whether the judgment was paid or not, is of no importance, as

the defendants are equitably estopped from disputing its payment: — 9 *Met.* 511, 517; 21 *Pick.* 195; 12 *Met.* 545; 7 *Hill*, 250; 9 *Met.* 511.

5. The $1500 note given by Bailey to Miller, secured by a chattel mortgage on his furniture, was several months after the assignment had been made, and after one of the defendants had repeatedly assured Roberts that they should not look to him, and that the judgment was satisfied. Whether taken to secure the payment of the judgment, or to aid Bailey in defrauding his creditors, is immaterial, as affecting the rights of Roberts. No one would claim in a court of equity that a creditor could aid his debtor in covering up his property, in this manner, without discharging the surety. He can not, wilfully, shift the burden of a debt from the property of his principal debtor, and impose it on the surety.

*A. E. Chadwick* and *W. T. Mitchell*, for defendants:

All the material allegations of the bill are distinctly and definitely denied by the answer, and the complainant has failed to meet these denials by sufficient proof. In no case has he met a denial by the testimony of two witnesses; and in points where the complainant's testimony is added to Bailey's, the defendants have counterbalanced the testimony so as to leave the allegations of the bill unsupported by prepondering testimony.

When the facts stated in the complainant's bill are denied in the answer, it is a general principle that they must be proved by two credible witnesses, or one witness and strong corroborating circumstances: — *Adams Eq.* 21.; 6 *Johns.* 522; *Story's Eq. Juris.* § 1528.

Complainant not having charged that the judgment sought to be avoided, was obtained by fraud, mistake or surprise, is estopped from proof of such fact. It is then clear that complainant is estopped from going into matters arising before the judgment; and by his default he waived

all legal and equitable rights, even had he covered such matter by his bill.

A court of equity will not enjoin a party from pursuing a judgment at law, upon any ground which afforded a defense at law, unless he shows some good reason for not making the defense; as that he was prevented by accident, surprise or mistake, or by the fraud of the opposite party, without his own fault or neglect: — 13 *Vt.* 477; 1 *Johns. Ch.* 465; 1 *Johns. Ch.* 49.

Roberts is not released by any act of defendants since the judgment. It is not shown that time was given to Bailey, and complainant has not been deprived of any right of recourse to Bailey, nor has there been any misappropriation of moneys which he was entitled to have applied on the judgment. The proofs in regard to the chattel mortgage are immaterial, as there is no charge in the bill concerning it. The facts stated in a bill in equity constitute the sole ground of relief: — 7 *Conn.* 496; 1 *Bland,* 236; 2 *Bland,* 45; 2 *Ired. Ch.* 575; 3 *Swanst.* 472; 6 *Price,* 240; 18 *Ves.* 302; 11 *Wheat.* 103; 11 *Pet.* 229; 7 *Vt.* 229; 15 *Vt.* 110.

As indorser, Roberts did not stand in the relation of a surety. There is a broad distinction between them. And to the extent of this distinction, complainant's allegations are wide of the issue. When the indorser has notice of dishonor, he is bound to pay at once. Mere indulgence or passiveness on the part of the holder can not impair his right. The demand may, at the option of the holder, be enforced against the indorser separately.

CAMPBELL J. :

The bill in this case was filed to restrain the sale of property under execution.

Defendants hold a judgment against complainant as indorser, he being sued jointly with Mark T. Bailey the maker of a promissory note indorsed for Bailey's accom-

modation, and the judgment being against both, and rendered July 6, 1859.

The facts show that when the note was indorsed, Roberts, who was an illiterate man, was assured by Miles (the partner in a bank consisting of all the defendants) that the indorsement was a mere form, and that complainant should never receive any trouble about it. No defense, however, was interposed in the suit at law.

July 14, 1859, an execution was issued on this judgment, but no attempt appears to have been made to serve it. In August an assignment was made by Bailey and his partner, W. L. Bancroft, to Miller, providing among other things for the payment of all claims held against them or either of them by defendants. Bailey and Bancroft were to be at liberty to draw $1000 for individual purposes.

There was during the season of 1859 a sum of money, which is testified to as $1000 or $1500, held by the bank belonging to Bailey and Bancroft, of which Bailey directed Miles to credit one half on this judgment, which he promised to do, but afterwards credited all upon debts of Bancroft.

After the assignment, and in August, Miles swears he told complainant that the debt was fully secured by the assignment, and that he would, or probably would, never be troubled about it. In October, 1859, complainant testifies that Miles told him it was settled by money on hand. Bailey testifies Miles told Roberts it was all got along with.

November 16, 1859, Bailey executed to Miller, without any new consideration, a chattel mortgage for $1500, payable in one year. This does not appear to have been a bona fide transaction, but the mortgage was subsequently claimed by Miles and Miller as security for the judgment. The mortgage was on Bailey's furniture, which was of its full value. The furniture was afterwards secreted, and

Miller claimed under oath that he had been defrauded by the removal. He held no other claim against Bailey except the judgment.

In March, 1860, an execution having been issued on the judgment, and levied on complainant's property, Roberts applied to Miles, who released it, saying the execution was issued against both because the judgment was against both, but that he did not intend to have complainant's property levied on, and that the levy was a mistake of the sheriff.

In October, 1861, the levy sought to be enjoined was made on property belonging to complainant. No application is shown by any one to have ever been made to complainant for payment. In June, 1861, as appears from Mr. Crellin's testimony, Miller said to him that he supposed Roberts was not liable. This was while proceedings were going on against Bailey for the fraudulent secretion of the mortgaged chattels, which were then claimed as security for this judgment. Eddison's testimony is to the effect that defendants claimed the chattel mortgage as security for this debt.

It is claimed by complainant, as one ground of relief, that time was given by this chattel mortgage, and that this operated as an independent ground of discharge. The objection of the defendant's counsel to this ground of relief is well taken. The proofs do not come up to the allegations. It is very clear that the attempt to hold this mortgage as a security for the judgment was an afterthought of defendants, and that it at first was taken by Miller as an assistant to Bailey in putting the property out of the reach of his creditors. But while this specific ground of relief fails, the facts connected with the mortgage are admissible, so far as they tend to explain the other transactions.

The principal ground of relief set up is, that Roberts has been uniformly assured that no liability would be

enforced against him, and under such circumstances as would dissuade him from securing himself against loss, which the evidence shows he might easily have done by means of Bailey's furniture before it was mortgaged to Miller; and further, that defendants, when they had out an execution, and knew Bailey had ample property to be levied on, did not make any such levy. It is also claimed that, by the receipt of money which was not applied as directed by Bailey, defendants were actually paid or nearly paid.

The bill calling for an answer under oath, defendants denied most of the charges by following *verbatim* the language of the complainant. The answer was not excepted to, but, in considering its value as a piece of testimony, it is to be observed that the object of a discovery is to be informed touching the entire transaction referred to, and a literal denial which does not deny that the charge may after all be substantially true, is in many cases a mere evasion. *Story's Eq. Pl.* § 852; *Mitf. Eq. Pl.* 309, 310; 2 *Dan. Ch. Pr.* 833, 834, 835 *and notes* (*Perkins's Ed*). In chancery, as at law, a case is made out by proof of the substance of an allegation, and if such an answer is to be allowed the usual weight, so far as it goes, it cannot fairly be made to extend beyond its strict language.

The proof that after the assignment from Bailey and Bancroft to Miller, Miles informed Roberts that it was settled by *money on hand*, is only made by Roberts, and Miles denies it. But Bailey swears Miles told Roberts that "*he might rest easy, for that matter of Bailey's was all got along with.*" And Miles when swearing on his own behalf admits he may have told him that he would not be troubled about it.

The real question involved here, is, whether Miles induced Roberts to believe that he was no longer liable on the judgment. Regarding these statements of the three

deponents as we should be allowed to in the absence of any technical rules, we could not hesitate in determining that Roberts was so persuaded by Miles, and that Miles meant to give him such an impression. And if we are at liberty to consider the testimony concerning the original indorsement, we should be equally convinced that Roberts was induced by Miles, and not by Bailey, to make the indorsement, and that he had been led to believe that no liability would ever be enforced against him, and was therefore the more easily justified in accepting Miles's further statements touching his discharge. And if we look to the still subsequent release of his horses when levied on, and the explanation and apology of Miles, it is difficult to imagine how Roberts could have doubted of his own immunity. But we are called upon to hold that, in spite of the convincing character of this testimony, it must be disregarded [upon fixed rules of equity practice. As this is the first case since our statutes have been changed in which any question has arisen concerning the supposed arbitrary value of testimony in equity, we deem it proper to consider the matter more fully than we should otherwise feel justified in doing. It is certainly important to learn whether impressions irresistibly derived from the entire body of testimony lawfully in the case, can be disregarded upon any doctrine of equity procedure.

The theory which is supposed to prevent the establishment of any claim to relief in this case, is that an answer, when responsive to a bill, can only be overcome by two witnesses, or by one witness and strong corroborating circumstances. It is suggested that a complainant who has sworn to his bill cannot, by any subsequent testimony, add to its weight, and that Miles, having answered by an unqualified denial, is not overcome by Bailey's testimony, or any circumstances otherwise appearing.

A bill in chancery is never evidence in favor of complainant, whether sworn or unsworn. The oath of com-

plainant verifying it is only needed where required by some statute or rule of practice, and can then only avail in obtaining an injunction or other preliminary relief. It is no evidence on the hearing, unless confessed or admitted. Roberts when placed on the stand as a witness gave his testimony solely in accordance with the statute of 1861, which provides that — with some exceptions—no person shall be excluded as a witness because he is a party:—*L.* 1861, *p.* 168. Being then sworn as a witness, he is to receive such credence as under all the circumstances he appears fairly entitled to. And the same rule must apply to the defendants when placed on the stand. They may be lawfully called by either party, and examined like other witnesses. And the somewhat peculiar question is presented in this case, whether a defendant's answer can serve to counterbalance in his own behalf his own testimony on the stand, so as to neutralize or overcome the latter so far as it appears to deviate from the former. For there is no doubt but that, in the case before us, the defendants' depositions are much more favorable to the complainant than their answer. When it is remembered that a defendant from whom discovery is demanded is, in giving it, a mere witness, to whose statements any extraordinary credit is only given because complainant has seen fit to produce him as reliable, the absurdity of giving to one portion of his testimony an arbitrary preference over another, and still more, a preference in his own favor, is too manifest to need argument. A brief reference to the rules concerning answers in chancery will show that no such consequences can be legitimately drawn from them.

At the common law a party could not be a witness, and could not discredit — (although he might contradict) — any witness whom he might call, unless that witness was one the law compelled him to produce. In equity he could never, after issue joined, examine as a witness

any defendant against whom he desired a decree. But he might require of a defendant in his answer a full response to any allegation in the bill, and where a defendant of his own knowledge fully and fairly negatived any allegation, complainant could obtain no relief depending upon that allegation, unless the answer was overcome by more than the equally full testimony of one witness. This is the extent of the rule; and it is based on the theory that a complainant seeking relief has always the burden of proving that he is entitled to the relief prayed, and that if there is nothing presented on his behalf but the conflicting statements of witnesses who, being of equal credit, neutralize each other, the case stands without proof, and the Court cannot act. *See* 2 *Dan. Ch. Pr.* 983 (*Perkins's Ed.*) for a concise statement of the rule. Accordingly, if the witness contradicting the answer is corroborated by any further proof or circumstances, the Court may then decree according to the preponderance of evidence in favor of the complainant. In other words, the rule amounts simply to this, that a decree can never be made in favor of a complainant unless the evidence preponderates in his favor; and that where answer and opposing witness are equally full, fair and explicit, there can be no such preponderance. See 2 *Dan. Ch. Pr.* 985. If, therefore, a defendant on the stand furnishes the means of destroying his own answer, and corroborating complainant's case, his testimony is preferable to his answer, for the same reason which makes any oral examination and cross examination more favorable for eliciting the truth than a statement where the affiant is not pressed to answer questions too rapidly to enable him to deliberate how he can best shape his response to secure his own ends. No one who desires to sift a witness would ordinarily prefer a discovery to an examination on the stand; but under our present system, where both may be resorted to, the choice is not very important. Mr. Headlam is of opinion

that now the whole force of the old rule is done away :—2 *Headlam's Dan. Ch. Pr. 3d ed. p.* 676. He remarks " The defendant is now, as we have seen, enabled to obtain the benefit of his own testimony, and the Court will probably not be bound by any previous decisions in balancing his testimony against that of a witness." This old practice has often been misunderstood and misapplied, and since the statute has removed the only reason which ever made a discovery by answer necessary, we think there is no longer any occasion for giving to the evidence of a witness in one shape any more force than it would have in another. Strictly speaking, the old rule, when fairly carried out, may not have done so; but it is not to be denied that its existence has led practically, in many cases, to arbitrary and improper conclusions. We are therefore of opinion that an answer in chancery responsive to a bill is now to be regarded as of the same force which it would have were it the defendant's deposition as a witness.

The question then arises, how far the conduct of Miles, as we find it shown by the proofs, precludes defendants. from enforcing their claim against Roberts. Inasmuch as he appears to have been the active man in all the transactions with Roberts, no doubt can arise concerning the responsibility of all the defendants for his acts. Nor is there any legal foundation for any claim that Roberts is not entitled to all the rights of suretyship. Miles knew him to be an accommodation indorser, and had no right, therefore, after judgment or before, to interfere to his prejudice. By not defending the suit at law, Roberts is precluded from claiming that the judgment was not binding when rendered. But so far as past transactions tended to explain subsequent ones, and to throw him off his guard, they are not only admissible in evidence but very significant. Having been assured in the outset that he would never be troubled, it is evident he always acted on

that idea, and when after the judgment he was assured that the whole matter was arranged or settled, and that he would never be troubled about it, he was justified in believing the statement, and acting upon it. The whole course of Miles was such as to induce any man to believe that no liability was claimed to exist against him. And the statement that money was in hand to pay it — a statement which we are satisfied was made in fact, or in such terms as conveyed that idea to Roberts — would naturally put him at ease completely, and prevent him from taking any measures to protect himself.

It is claimed, however, that it does not appear that Roberts was prevented by this course of Miles from obtaining security; and that he states himself that he never applied to Bailey except on behalf of defendants. He explains, however, that the reason he did not apply for security was because he did not consider himself liable. Where a party abstains from doing what all prudent men are likely to do for their own protection, and where an adequate motive appears for so abstaining, the inference is very strong that the inaction was caused by the motive. The case shows that security might easily have been enforced, and we must conclude, especially when we have direct evidence of the reason, that it was not demanded because Miles had induced Roberts to think it was not necessary.

Leaving out of view then all the questions concerning the actual extinguishment of the claim by payment, or by giving time, or other unauthorized action, we think Roberts entitled to relief on the ground that, by persuading him that he was not liable and would not be pursued, the defendants actually induced him to abstain from securing himself, when he might easily have done it, and when it has since become impossible.

We do not base our decision on the ground that Bailey's property has been disposed of or covered up by the

agency of any of the defendants, as the case made by the bill is not completely adequate to sustain independent relief for this cause. But we find nothing in the case, whether properly or improperly introduced, which can diminish the equities which are alleged and proved.

The decree below, enjoining further proceedings against Roberts, must be affirmed, with costs.

The other Justices concurred.