WILLIAM L. WEBBER v. ANDREW E. JACKSON AND TIMOTHY W. JACKSON.

*Fraudulent conveyances—Equity pleading—Witnesses—Evidence.*

1. An answer by the grantee in an alleged fraudulent conveyance to a creditors' bill, in which he contents himself with saying that the conveyance, *if* any was made, was made in good faith and for a valuable consideration, is not only without point, but it asserts no rights whatever in the grantee, and is a circumstance of some meaning.

2. It seems a little incongruous to claim that a party who puts a defendant on the stand for the express purpose of showing his fraud, thereby gives him credit for honesty. This same claim was set up in *Roberts v. Miles,* 12 Mich. 297, where it was held that, whatever risks may be run in doing so, testimony is to be judged according to its merits, and creates no estoppel.

3. While fraud is not to be assumed without proof, it is nevertheless oftener shown by circumstances than in any other way. When things appear that are contrary to the ordinary ways of honest business men, and call for explanations which might be, but are not, given, it is no violent inference to conclude that there is something wrong; and where this occurs repeatedly, and is the general characteristic of the conduct and statements of the parties, it is their own fault if they are held to the consequences.

79   175
s44NW 591
131   ²478

79   175
146  512
146  513

4. It is held upon a review of the record that the transaction com-
plained of in this case was not only meant to avoid payment
of a claim which had no defense, but that there was no genu-
ine sale to defendant Timothy W. Jackson; and the conveyance
to him is declared void as against complainant's levy and judg-
ment, who is entitled to a receiver, if he chooses 'to have one,
and to have the usual assignment to him under the practice in
judgment creditors' bills, and to pursue the usual remedies in
such cases.

Appeal from Saginaw. (Gage, J.) Argued January 8,
1890. Decided January 17, 1890.

Judgment creditors' bill. Complainant appeals. Decree
reversed, and one entered for complainant. The facts
are stated in the opinion.

*S. G. Higgins* (*Wisner & Draper*, of counsel), for com-
plainant.

*William H. Sweet*, for defendants.

CAMPBELL, J. Complainant filed a judgment creditors'
bill in aid of execution, and to reach equitable assets.

On September 26, 1884, he recovered a judgment in a
suit upon a former judgment indebtedness against Andrew
E. Jackson for between seven and eight thousand dollars.
In April, 1884, while this suit was pending, it is claimed
by defendant Timothy W. Jackson that he bought in
good faith, and for a completed valuable consideration, a
considerable amount of real estate in Saginaw county
from his brother Andrew, being the land levied on by
complainant; the consideration being $6,737.74 of past
indebtedness given up.

The validity of this alleged arrangement is the only
important question before us. If that was valid, there
seems to be nothing else to get at as equitable assets or
personalty. If it was not valid, its rescission involves
the subsequent dealings in regard to rents, and other

incidental profits and property, based on the ownership of the land.

The defendant Andrew E. Jackson, instead of answering the bill seriously, filed a so-called "answer" which is full of impertinence, in the popular as well as the legal sense of that word, which deserves censure. As no answer under oath was asked, it amounts to nothing, except so far as it professes to show the nature of the transfer to Timothy; and in this it is not clear. Timothy, who is the defendant chiefly interested, ostensibly claimed to be a *bona fide* purchaser for valuable consideration. His answer amounts to no more than an assertion of the fact, without explanation. But, instead of averring the fact that there was a conveyance, and that it was for value, he contents himself with saying that the conveyances,—

"If any were made by said defendant Andrew E. Jackson to this defendant, were made in good faith, and for a valuable consideration."

Such an answer is not only without point, but it asserts nó rights whatever in defendant, and is a circumstance of some meaning. Complainant put Andrew on the stand, and in a long examination, in which direct and cross examination alternate frequently, the defense is, rather shadowed out than plainly sworn to, that in April, 1884, Andrew went to the state of New York, at Timothy's request, and had an accounting with Timothy, and arrived at a balance due of the sum stated. It is not suggested or shown that Andrew had any counter-claims. The amount of debt is said to have been figured up by adding together several notes and express receipts, which are produced and identified by Andrew, but not by Timothy, who, however, says the amount named in the deed was due for loans. None of those items accrued within

the period of limitation, except one. All the items of notes were, with that exception, dated in 1874, 1875, and 1876, and payable at from 10 to 30 days, except one, of December 5, 1874, for $130, at six months. Among these notes was one 30-day note, of $3,477.17. None of them had any place of payment. In each of them the word "order" had been changed to "bearer," which is a very uncommon thing in such business. Most of them had no appearance of handling. All were on the same printed or lithographed form, got up some years before, in the days of revenue stamps; and most of them had the left-hand ornamental portion torn off, wholly or partially. There is no explanation why they, or some of them, had never been demanded or discussed during their legal life. There was no attempt to show that any of these notes represented any particular money or other transaction. None of them was identified by Timothy; but he did swear that all of the notes and other evidences of debt were surrendered to Andrew in the spring of 1884, when in New York, and that the settlement was then completed,—which is not true, literally, at least.

In this connection it may be noted that while, according to both parties, the settlement was the result of urgency from Timothy, which seems to have been a single instance of solicitude after many years of quiet, and both say it was completed, no writing was made on either side, and no haste was shown in conveying. A paper is produced, purporting to be a letter from Timothy to Andrew, dated May 10, 1884, and within two weeks of the alleged settlement, as follows:

"Mr. A. E. JACKSON,

"*Sir:* As you have executed the deed of property to me as you said you would when here, now see if you can find any one to lend money and fill out mortgage, and

send to me, and I will execute it, and return. I want
$1,200 or $1,500 dollars, five or ten years.

"TIM W. JACKSON."

Timothy does not refer to this in his testimony.
Andrew, according to his testimony, never wrote him on
business after his return to Michigan. No attempt seems
to have been made to borrow money, and nothing more
was said by any one concerning this matter. The testi-
mony shows both defendants to be intelligent men, of
some business experience. At this time the deed was not
made. Andrew, at some time or other, drew it up him-
self. He did not get his wife to execute it. It was
dated April 28, 1884, but was not witnessed or acknowl-
edged until June 23, when it was recorded. It was never
sent or delivered to Timothy; and it does not appear
whether he heard of it at all before suit. Andrew con-
tinued to use the property, and receive its returns, under
what he claims to have been an agreement with Timothy
to do so on shares. Timothy says nothing of any such
agreement, never received a cent of the proceeds, and
never asked for it, and heard nothing from Andrew about
that, or any other matter which related to his supposed
interests.

It is claimed by counsel that because complainant swore
Andrew he must be considered as asserting his veracity.
No such difficulty exists concerning Timothy, who utterly
fails to throw any satisfactory light on what concerns
him much more than it concerns Andrew. But it seems
a little incongruous to claim that a party who puts a
defendant on the stand for the express purpose of show-
ing his fraud, thereby gives him credit for honesty. This
same claim was set up in *Roberts v. Miles*, 12 Mich. 297,
where it was held by this Court that, whatever risks may
be run in doing so, the testimony is to be judged accord-
ing to its merits, and creates no estoppel.

We have no disposition to go into conjectures concerning the real character or origin of some of the very suspicious documents before us; but a review. of the whole record convinces us that this transaction was not only meant to avoid payment of a claim which had no defense, but that there was no genuine sale at all. All of the circumstances indicate that it was a sham throughout, and that Timothy's name is used to hold what has never been anything but Andrew's property. The testimony is evasive, and too vague to explain what needed explanation, and what both parties—Timothy as well as Andrew—must have been able to explain. While fraud is not to be assumed without proof, it is nevertheless oftener shown by circumstances than in any other way. When things appear that are contrary to the ordinary ways of honest business men, and call for explanations which might be, but are not, given, it is no violent inference to conclude that there is something wrong. And where this occurs repeatedly, and is the general characteristic of the conduct and statements of the parties, it is their own fault if they are held to the consequences.

We think that the conveyance to Timothy should be declared void as against complainant's levy and judgment, and that all the proceeds, so far as they can be reached, and all the dealings connected with the land, must be regarded as belonging to Andrew. The complainant is entitled to a receiver, if he chooses to have one, and to have the usual assignment to him under the practice in judgment creditors' bills, and to pursue the usual remedies in such cases. He is entitled to a reversal of the decree below, with costs of both courts, and to enter a decree in accordance with these views.

The other Justices concurred.