O'DELL *v.* DAY.

1. FIXTURES—MORTGAGES—RULE AS TO WHEN ARTICLES NOT AT-
TACHED BECOME SUBJECT TO MORTGAGE.

   No specific rule can be laid down designating when ar-
   ticles not permanently attached to the realty become sub-
   ject to a mortgage thereon.

2. SAME—EVIDENCE—INTENT—QUESTION FOR JURY.

   In an action of replevin by a mortgagee against the
   mortgagor of vineyard land to recover the possession of
   certain machinery removed from a grape juice plant on
   said land by defendant after foreclosure, evidence *held*,
   to present a question for the jury as to whether said
   machinery, not attached to the freehold at the time the
   ·mortgage was executed, became subject to the mortgage.

3. EVIDENCE—REPLEVIN—MORTGAGES—CONVERSATION AND LETTERS
ADMISSIBLE.

   Where the question at issue was whether it was the in-
   tention of the parties that equipment for a grape juice
   plant not yet attached to the freehold should become a
   permanent accession to the freehold and thus become sub-
   ject to the mortgage thereon, talk between the parties
   and letters from the mortgagor to mortgagee were ad-
   missible in evidence over objection that it tended to alter,
   vary, enlarge, and change the written mortgage.

4. REPLEVIN—RIGHT TO POSSESSION—PROOF.

   Plaintiff in replevin must prove that he was entitled to
   the possession of the property described in the writ on
   the day of its issue.

5. APPEAL AND ERROR—EVIDENCE—HARMLESS ERROR.

   In an action of replevin brought by a mortgagee against
   the mortgagor of vineyard land to recover the possession
   of machinery in a grape juice plant removed by defend-
   ant from said land after foreclosure, claimed by him not
   to be covered by said mortgage, evidence that plaintiff
   had paid the claims of vendors of certain of the prop-
   erty replevined after the action was begun, *held*, not
   prejudicial to defendant, since the jury were properly in-

structed that the only question for them to pass upon, aside from damages, was whether the mortgage covered the property described in the writ.

6. WITNESSES—ADVERSE WITNESS—IMPEACHMENT.

Where counsel for plaintiff called defendant for cross-examination under the statute (3 Comp. Laws 1915, § 12554), and, when he had concluded, counsel for defendant examined him at length on the entire issue presented, plaintiff was properly permitted, after defendant had rested, over objection of defendant, to introduce testimony tending to impeach him.

7. ESTOPPEL—PARTY INVOKING MUST HAVE BEEN PREJUDICED.

In order that the conduct of a party should constitute an estoppel, it must appear that the other party had acted to his prejudice, relying on it.

8. SAME.

Plaintiff was not estopped from claiming, in an action of replevin, that certain machinery in a grape juice plant was covered by his mortgage on the realty because as attorney for a creditor in defendant's bankruptcy proceedings he had claimed that a part of the machinery was personalty, where defendant had not acted to his prejudice, relying thereon.

Error to Van Buren; Des Voignes (L. Burget), J. Submitted April 22, 1921. (Docket No. 13.) Decided June 6, 1921.

Replevin by Benjamin F. J. O'Dell against James Ingersoll Day. Judgment for plaintiff. Defendant brings error. Affirmed.

*Earl L. Burhans* and *David Anderson,* for appellant.

*Glenn E. Warner,* for appellee.

SHARPE, J. This case was before this court in 200 Mich. 259. A reference to that opinion will obviate the necessity for a lengthy statement of facts. It was there decided that on the record as made a verdict

should have been directed for the defendant and a new trial was ordered. On such trial the case was again submitted to the jury and a verdict again rendered for plaintiff. Defendant's motion for a new trial was denied, and the case is again before us for review on writ of error. Without specifically referring to the several assignments we will consider those discussed by counsel for defendant in their brief.

1. A motion for a directed verdict was made and denied. Counsel insist that the record now made contains no more evidence than the former one tending to show that plaintiff's mortgage covered the property in question and that a verdict should have been directed in his favor. In the former case it was said:

"It appears that at the time the $8,000 mortgage was executed by defendant to plaintiff, the grape juice plant was equipped with machinery."

It was further said:

"Nor does it appear that the money was advanced by either of the mortgagees to the mortgagor for the purpose of purchasing equipment for the plant."

We quote from the cross-examination of defendant in the record now before us:

"At the time of this $8,000 mortgage to O'Dell there was no juice plant on the land * * * This money was borrowed from O'Dell to take up a $2,000.00 mortgage which was due and the rest of the money was spent in building this plant."

The plaintiff testified:

"I told him a loan of this kind was perilous because he had his loans divided up as he did and because I didn't agree with his values on vineyard lands. He gave me Exhibit A at this time. This is the conversation about it. He said all the money was going into the plant and machinery and enhanced the value of the security. I said that was true and if business relations were consummated between us as we figured

it would be, that there was a period and time at which material would be there before it went into the building and before the building could be finished. He satisfied me as far as the building was concerned but not as far as the machinery would be concerned. He then asked what he could do, how he could satisfy me and I told him it would be necessary for him to give me a chattel mortgage on the machinery until it was attached to and became a part of the building and was put into it and used as a factory. And that he agreed to do. I told him to put it in writing. He left the office and came back again and had it in writing and the next day we drew the mortgages and I gave him the money."

The writing, in the form of a letter addressed to plaintiff and signed by the defendant, reads:

"I write to confirm our verbal arrangement and that is that as soon as I build and install the machinery for the juice plant, which I intend to do with the money I am borrowing from you, I will give you a chattel mortgage on the same."

Plaintiff further testified that when the plant was completed he saw defendant and—

"I said, 'Mr. Day, I see you have got the machinery here.' And he said, 'Yes.' And I said, 'Well, how about the mortgage you were to give me on it?' 'Well,' he says, 'it is all attached to the building now, and,' he said, 'I have been so awful busy and I am short of time,' he said, 'I didn't bother with it.' He says, 'I intended to write you about it but I have been working here late hours at night, but it is in the building, and,' he says, 'I guess you are satisfied with your security, aren't you?'"

Further evidence of the intention of the parties is supplied by the letters written by defendant to plaintiff, quoted at length in the former opinion. The only purpose defendant could have had in writing them was to seemingly admit that plaintiff was entitled to the equipment in the plant and thus lull him into

fancied security until he might remove the machinery therefrom. No specific rule can be laid down designating when articles not permanently attached to the realty become subject to a mortgage thereon. The general subject was recently considered by this court in *Morris* v. *Alexander*, 208 Mich. 387. We content ourselves with approving what was there said by Mr. Justice FELLOWS. Under the evidence here presented, the motion to direct a verdict was properly denied.

2. Counsel for defendant insist that the talk between the parties and the letters written by defendant were not admissible in evidence because tending to "alter, vary, enlarge and change" the written mortgage. With this we cannot agree. The mortgage described the real estate on which the plant and its equipment were located. The issue presented was whether it was the intention of the parties that the equipment should become a permanent accession to the freehold. See *Morris* v. *Alexander, supra.*

3. Plaintiff was permitted to show that he had paid the claims of the vendors to certain of the property replevined after the suit was begun. While the plaintiff in replevin must prove that he was entitled to the possession of the property described in the writ on the day of its issue, we fail to see how the receipt of this evidence was in any way prejudicial to the defendant. As between the plaintiff and the vendors of the machinery and equipment of the plant, a different question might be presented. Here the dispute is between the owner of the real estate and a mortgagee. The trial court very clearly instructed the jury that the only question for them to pass upon, aside from the damages, was whether the mortgage covered the property described in the writ.

4. Counsel for the plaintiff called the defendant for cross-examination under the statute (3 Comp. Laws 1915, § 12554). When he had concluded, counsel for

the defendant examined him at length on the entire issue presented. After the defendant had rested, plaintiff was permitted, over the objection of defendant, to introduce testimony tending to impeach him. We think this was permissible. This statute has been many times before this court for construction. *Jones v. Railroad Co.*, 168 Mich. 1, 14; *Johnson v. Carbide Co.*, 169 Mich. 651, 659; *Seebach v. Railways Co.*, 177 Mich. 1; *Rathbone v. Railway*, 187 Mich. 586, 590, 601; *Aphoresmenos v. McIntosh*, 189 Mich. 680, 683. The most recent utterance on the subject is found in *Steele v. City of Ionia*, 209 Mich. 595, 600. It was there said:

"A Mr. Girard who had for 19 years been water commissioner of the city, having charge of its waterworks and sewers, was called by plaintiff as an adverse witness under the statute (3 Comp. Laws 1915, § 12554). After plaintiff's counsel had completed his cross-examination, the witness was fully examined by defendant's counsel before the motion for a directed verdict was made and much important testimony was given by him. We do not understand counsel to agree fully as to the force to be given this witness' testimony. It will be sufficient that we say that under the terms of the statute plaintiff was not bound by the testimony of this witness and was at liberty to call such witnesses as she desired to dispute his testimony, but as to such testimony as this witness gave upon his examination by defendant's counsel as is undisputed, it must be treated as though introduced by defendant from a witness originally called by him with the same benefit as though the witness was examined in the first instance by defendant's counsel. In other words, while plaintiff was not bound by anything this witness testified to, and could dispute all testimony given by him, this did not deprive the defendant of the right to examine him as its witness or to the benefit of the testimony given by him upon such examination. Such facts as were testified to by him upon such examination and which are undisputed

must be given the same effect as though elicited from a witness originally called by defendant."

If the facts testified to by defendant when examined by his own counsel "must be treated as though introduced by defendant from a witness originally called by him with the same benefit as though the witness was examined in the first instance by defendant's counsel," we can see no reason why such witness is not subject to the same rules relative to impeachment as apply to any other witness who might be called by the defendant.

5. The third reason assigned by defendant why a verdict should have been directed in his favor was that under the evidence the plaintiff is estopped from claiming title to the property in question. This is based on the claim that in certain proceedings in defendant's bankruptcy matter, plaintiff, as attorney for a creditor, insisted that a part of this property was personalty and the title thereto in the vendors thereof.

In order that the conduct of the plaintiff should constitute an estoppel, it must appear that the defendant had acted to his prejudice relying on it. In *Detroit Savings Bank* v. *Loveland,* 168 Mich. 163, this court said:

"Estoppel is a bar which precludes a person from denying the truth of a fact which has in contemplation of law become settled by the act of the party himself, express or implied. If one's conduct induces another to believe in the existence of certain facts, and the other acts thereon to his prejudice, the former is estopped to deny that the state of facts does in truth exist. 16 Cyc. p. 680, and cases there cited. Bigelow on Estoppel (5th Ed.), p. 570."

The rights of the defendant in this suit were in no way affected by such action of plaintiff. In the case here presented, the rights of third parties are in no way involved.

We have carefully examined the entire record, having in mind all of the assignments of error, and feel constrained to hold that the case was fairly tried and properly submitted to the jury.

The judgment is affirmed.

STEERE, C. J., and MOORE, WIEST, FELLOWS, STONE, CLARK, and BIRD, JJ., concurred.