*In re* ESTATE OF TAYLOR.

DUNN *v.* TAYLOR.

1. WILLS—CANCELLATION.

   A will may be cancelled by burning (3 Comp. Laws 1929, § 13486).

2. SAME—PRESUMPTION OF REVOCATION.

   It is presumed that a will was destroyed by testator with intent to revoke it where it cannot be found at his death, upon proper search being made and especially where it is not traced out of his possession.

3. EVIDENCE—OPPOSITE PARTY—STATUTES.

   Testimony of opposite party called for cross-examination under the statute is evidence in the case (3 Comp. Laws 1929, § 14220).

4. JUDGMENT—PROBATE PROCEEDINGS—RES JUDICATA.

   On certification of will contest to circuit court, directed verdict for defendants *held*, proper where petition for probate of will, alleged to have been fraudulently destroyed, was not filed by alleged beneficiary until after estate had been duly administered by probate court as intestate estate, property distributed and administrator discharged and there is evidence from which inference may fairly be drawn that beneficiary had knowledge of such final action by probate court before filing petition.

Appeal from Bay; Houghton (Samuel G.), J. Submitted October 12, 1934. (Docket No. 70, Calendar No. 37,810.) Decided May 17, 1935.

Petition of Victor Dunn and another for probate of will of Frederick Taylor, deceased. Objection filed thereto by Vincent F. Taylor. Certified to circuit court. Directed verdict and judgment for defendant. Plaintiffs appeal. Affirmed.

*Leibrand & Leibrand,* for plaintiffs.

*J. L. McCormick,* for defendant.

POTTER, C. J.  Frederick Taylor died March 27, 1932.  His estate was duly administered by the probate court of Bay county; his property distributed; and the administrator discharged.

Victor Dunn, his nephew, filed in the probate court of Bay county a petition to probate a will claimed to have been made in his favor and to have been fraudulently destroyed by Vincent F. Taylor, son of deceased.  Objections to the establishment of the will described in the petition were filed by Vincent F. Taylor.  July 28, 1933, Victor Dunn asked the contest be certified to the circuit court of Bay county for trial.  August 9, 1933, the case was certified by the probate court of Bay county to the circuit court of the same county for trial.  October 23, 1933, Vincent F. Taylor filed an additional objection to the petition of Victor Dunn.  Judgment for defendant was directed by the trial court.  Plaintiffs appeal.

Two questions are presented—*first,* was there sufficient evidence introduced upon the part of plaintiffs Dunn to make the question of the destruction of the will by Frederick Taylor a question of fact for the jury; and, *second,* do the proceedings of the probate court constitute a former adjudication of the rights of the parties.

It is conceded Frederick Taylor, in his lifetime, made and executed his last will and testament.  It is the claim of his son, Vincent F. Taylor, the will was destroyed either by the testator himself, or at his express direction, by throwing it, or causing it to be thrown, in a stove and burned.  In any event, no will has been found.

The statute, 3 Comp. Laws 1929, § 13486, provides that a will may be cancelled by burning.

"It is without question the rule of law that, where a will cannot be found at the death of the testator

upon proper search being made, and especially where the will is not traced out of the possession of the testator, it is to be presumed that it was destroyed by him *animo revocanda.*" *In re Keene's Estate,* 189 Mich. 97, 102 (Ann. Cas. 1918 E, 367).

This presumption of revocation may be met by proof of declarations of the testator indicating the will was still in force, but no such testimony of declarations of the testator was introduced. After plaintiffs rested their case, defendant made a motion for directed verdict. Upon application of plaintiffs, the case was reopened and plaintiffs called Vincent F. Taylor, defendant, in pursuance of the statute (3 Comp. Laws 1929, § 14220), for cross-examination, and witnesses were later called to dispute in some particulars his testimony. When plaintiffs called defendant for cross-examination under the statute, defendant thereby became plaintiffs' witness. Plaintiffs are bound by his testimony except so far as it was disputed. In the consideration of defendant Taylor's testimony, plaintiffs may not select isolated portions thereof and claim a force and effect for such portions of his testimony which the whole of his testimony does not warrant. The testimony of the opposite party as a witness must be treated as a whole; and, when so treated, defendant's testimony negatives plaintiffs' claim. *Jones* v. *Railroad Co.,* 168 Mich. 1; *Cook* v. *Railroad Co.,* 189 Mich. 456; *Steele* v. *City of Ionia,* 209 Mich. 595; *O'Dell* v. *Day,* 214 Mich. 566; *Waller* v. *Sloan,* 225 Mich. 600; *Swank* v. *Croff,* 245 Mich. 657; *Fleegar* v. *Consumers Power Co.,* 262 Mich. 537; *Snyder* v. *Johnson,* 264 Mich. 286.

As said in *Fleegar* v. *Consumers Power Co., supra*:

"His testimony, being in the case, must be weighed and considered the same as that of any other witness

(*City of Kalamazoo* v. *Standard Paper Co.,* 182 Mich. 476); and though plaintiff was at liberty to contradict his testimony (*Cook* v. *Railroad Co.,* 189 Mich. 456), she was bound thereby (*Aphoresmenos* v. *McIntosh,* 189 Mich. 680), except so far as such testimony was contradicted (*Swank* v. *Croff,* 245 Mich. 657).''

Conceding that all the testimony of Vincent F. Taylor should go out of the case, the presumption of revocation still remains unaffected.

Defendant contends the question of who is entitled to the estate of Frederick Taylor, deceased, has been adjudicated and fixed by the various orders, including an order assigning residue, of the probate court of the county of Bay, in a complete administration of his estate as an intestate estate without an appeal being taken from such determinations and orders.

This question was argued upon defendant's motion to direct a verdict. The records and files of the probate court in relation to the estate of deceased were not a part of the record as presented on appeal but plaintiff Victor Dunn testified:

"*Q.* Didn't Mr. Taylor ask you if you claimed there was a will, and you were entitled to something, why you did not file your claim in the estate?

"*A.* I don't remember him asking me that.

"*Q.* Do you remember saying to him that you didn't have any claim?

"*A.* I never said such a thing.

"*Q.* What reason, if any, did you give Vincent Taylor for not taking up this matter before the estate was closed in the probate court?

"*A.* Well, I never gave him any that I know of.

"*Q.* Didn't you tell him that they would laugh at you if you went down there and made such a claim? The people down there at the probate court?

"*A.* No, I did not.

"*Q.* You knew this estate was being probated as an estate in which there was no will, didn't you?

"*A.* I knew it was being probated, but he never told me it was probated without a will.

"*Q.* Well, you knew it was probated without a will, didn't you?

"*A.* I didn't know until I called the probate office one day, or the prosecuting attorney did for me, along probably the last of February, 1933."

Plaintiff Victor Dunn testified that the next day after decedent's death Vincent Taylor and his wife had dinner at his house, and that Mr. Taylor then told him decedent had destroyed his will three or four days before his death. The fair inference from this testimony is that plaintiffs knew the estate had been probated, the administrator discharged, and the estate of decedent distributed before plaintiff Victor Dunn filed his petition in the probate court.

It has been frequently held that the orders and decrees of a probate court determining heirship and distributing the property of the estate of a decedent are final and conclusive and may not be collaterally attacked. *Calhoun* v. *Cracknell,* 202 Mich. 430; *Chapin* v. *Chapin,* 229 Mich. 515; *Thompson* v. *Thompson,* 229 Mich. 526; *Raseman* v. *Raseman,* 234 Mich. 237; *Benjamin* v. *Fairchild,* 242 Mich. 274; *Driver* v. *Union Industrial Trust & Savings Bank,* 264 Mich. 42.

We find no error in the judgment of the trial court, which is affirmed, with costs.

NELSON SHARPE, NORTH, and WIEST, JJ., concurred with POTTER, C. J. FEAD, J., concurred in the result.

BUSHNELL, J. (*concurring*). In concurring with Mr. Justice POTTER, I believe it should be said that the answers of a witness called for cross-exami-

nation under the statute, unless uncontradicted, are not as binding on the examiner as those of his own witnesses. The statute, 3 Comp. Laws 1929, § 14220, expressly makes the distinction:

"Hereafter in any suit or proceeding in any court of law or equity of this State, either party, if he shall call as a witness in his behalf, the opposite party * * * shall have the right to cross-examine such witness the same as if he were called by the opposite party; and the answers of such witness shall not interfere with the right of such party to introduce evidence upon any issue involved in such suit or proceeding, and the party so calling and examining such witness shall not be bound to accept such answers as true."

Prior to the enactment of the statute in 1909 (see Act No. 307, Pub. Acts 1909) either party to a civil action could be compelled to take the stand at the request of the other, 3 Comp. Laws 1929, § 14218, and the adverse party, when so called, became the witness of the party calling him, and like any other witness could be contradicted but not impeached. Thus, in *Smith* v. *Smith, Sturgeon & Co.,* 125 Mich. 234, Mr. Justice HOOKER, speaking for the court, said:

"We have consistently and uniformly held that while such a witness like any other called voluntarily, may not be impeached by the party calling him, his testimony may be contradicted."

Mr. Justice COOLEY, in a dissenting opinion in *Darling* v. *Hurst,* 39 Mich. 765, 770, pointed out, I think, the correct view when he said:

"I do not understand that a party by putting his adversary upon the stand, gives any peculiar force to the testimony he shall give over that which the

like testimony would have if given by other witnesses. He · may preclude himself from entering upon an impeachment; but the testimony his adversary gives is subject, when received, to the same examination and construction with that of other witnesses. Nor are sweeping denials by him entitled to any force whatever if the facts he details shows them to be unfounded.''

Added light is obtained from the language of two opinions of Mr. Justice CAMPBELL. He said in *Roberts* v. *Miles,* 12 Mich. 297, 305 (1864):

''At the common law a party could not be a witness and could not discredit (although he might contradict) any witness whom he might call, unless that witness was one the law compelled him to produce. In equity he could never, after issue joined, examine as a witness any defendant against whom he desired a decree.''

And later in *Weber* v. *Jackson,* 79 Mich. 175, 179 (1890) (19 Am. St. Rep. 165), he said:

''But it seems a little incongruous to claim that a party who puts a defendant on the stand for the express purpose of showing his fraud thereby gives him credit for honesty. This claim was set up in *Roberts* v. *Miles,* 12 Mich. 297, where it was held by this court that, whatever risks may be run in doing so, the testimony is to be judged according to its merits and creates no estoppel.''

One of the cases decided shortly after the enactment of the statute of 1909 was *Jones* v. *Railroad Co.,* 168 Mich. 1. There Mr. Justice OSTRANDER said (p. 15):

''The title would seem to be enough to show that these were not to be called as defendant's witnesses. They are there referred to as employees or agents of

the opposite party and as witnesses called in behalf of the party calling them. The act allows such witnesses to be cross-examined and contradicted by the party calling them. The provision that such calling shall not interfere with their right to contradict or deny the truth of their statements conferred no new right. This act does not give the right to make them the witnesses of the adversary of the party calling them."

The interpretation of the statute is clearly set forth in three opinions, the first by Mr. Justice Fellows, the second by Mr. Justice Nelson Sharpe, and the third by Mr. Justice Wiest:

"It will be sufficient that we say that under the terms of the statute, plaintiff was not bound by the testimony of this witness." *Steele* v. *City of Ionia,* 209 Mich. 595.

"Counsel for the plaintiff called the defendant for cross-examination under the statute (3 Comp. Laws 1915, § 12554). When he had concluded, counsel for the defendant examined him at length on the entire issue presented. After the defendant had rested, plaintiff was permitted, over the objection of defendant, to introduce testimony tending to impeach him. We think this was permissible." *O'Dell* v. *Day,* 214 Mich. 566, 570.

"What does the statute mean in giving 'the right to cross-examine such witness the same as if he were called by the opposite party?' The so-called 'orthodox rule' extending the right of cross-examination to all points material to issues involved, and not limiting it to matters brought out on direct examination, has ever prevailed in this State. *People* v. *Barker,* 60 Mich. 277 (1 Am. St. Rep. 501), and cases there cited. The legislature was aware of this rule and employed the term 'cross-examine' advisedly." *Waller* v. *Sloan,* 225 Mich. 600, 603.

Later cases further interpret this phase of the statute:

"Such witnesses were thereby made witnesses of plaintiff and plaintiff is bound by their testimony except insofar as such testimony is disputed." *Swank* v. *Croff*, 245 Mich. 657, 658.

"Gahring was a witness for the plaintiff, not for the defendant; * * * she was bound thereby except so far as such testimony was contradicted." *Fleegar* v. *Consumers Power Co.*, 262 Mich. 537, 541.

Critically examined, these later interpretations of the statute are also correct. They contain, however, the statement which is calculated to cause confusion, *i. e.*, that the witness called for examination under the statute is a witness for the party who calls him. This confusion has arisen in the minds of practitioners because of the fundamental rule of evidence that each party impliedly vouches for the credibility of his witnesses, *i. e.*, is bound by their answers. In short, the testimony of the opposite party, his employee or agent, called as a witness under the statute, is evidence in the case. The rule is correctly stated in Potter on Michigan Evidence, § 274, p. 464:

"Being in the case, such testimony is to be considered and it cannot be eliminated because called out on cross-examination."

But neither party, by calling a person for examination under the statute, makes that person his witness unless it be in the unimportant sense of having his testimony classified in the record with the plaintiff's or the defendant's witnesses, as the case may be.

The purpose of a trial is to bring out the whole truth in an orderly manner. Frequently, to do this, it becomes necessary to call an adverse party as a witness. The statute did not intend to bind the

party calling such witness so as to preclude impeachment, nor to prevent the refutation of false or erroneous testimony. Any other construction of the statute might lead to the suppression of the truth, and might result in the giving of testimony by the adverse party in direct contradiction of former statements made by him without the opportunity of impeachment. Frequently the adverse party may be the sole witness of an event, as in the instant case, and his testimony may on its very face appear to be false but still bind the examiner under any other construction of the statute. The statute was enacted for the purpose of eliciting the truth, not for suppressing it, and the greatest freedom should be given in bringing out the facts without any danger of being bound by testimony of an adverse witness who may testify falsely, for, as stated by Mr. Justice MOORE in *Maki* v. *Mohawk Mining Co.,* 176 Mich. 497, 503:

"It is apparent from what we have quoted from the act that its purpose was to do away with a technical rule of evidence, and to facilitate getting at the facts of a given case, so that it might be tried upon its merits."

BUTZEL and EDWARD M. SHARPE, JJ., concurred with BUSHNELL, J.