**McDONALD v. ROBERTSON et al.**

No. 7862.

Circuit Court of Appeals, Sixth Circuit.

June 28, 1939.

James E. Haggerty, of Detroit, Mich. (James E. Haggerty, of Detroit, Mich., on the brief), for appellant.

Charles R. Robertson, of Detroit, Mich. (Charles R. Robertson, of Detroit, Mich., on the brief), for appellee.

Before SIMONS, ALLEN, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

The question is whether the appellant, Hugh J. McDonald, or appellee Charles R. Robertson, special administrator of the estate of Ellen McDonald, deceased, is the owner of a deposit of $29,535.62 in the First National Bank of Detroit, Michigan, in liquidation, of which appellee B. C. Schram is receiver. The lower court found for appellee Robertson.

Between September 4, 1882, and October, 1898, appellant, Hugh J. McDonald, deposited in a savings account in the Peoples Savings Bank, Detroit, Michigan, predecessor of the First National Bank, various sums aggregating $10,515.72. The details of the deposit are not disclosed in the record because the original books of the bank have been destroyed.

Appellant withdrew no part of the deposit or its accumulation at any time nor made inquiry about it. On July 5, 1928, an officer of the Peoples Wayne County Bank, successor to the Peoples Savings Bank, wrote appellant in confidence calling his attention to the account and inquiring if he had the pass book showing the deposit and requesting that he forward it, in order that accumulations of interest could be entered, to which appellant did not respond.

The First National Bank went into liquidation February 13, 1933, at which time this savings account had increased to $29,535.62. Appellee Schram, receiver, through the Bank of Montreal, Cornwall, Ontario, located appellant, McDonald, at Dalhousie Mills, Canada, who executed a power of attorney to his brother, R. A. McDonald, to file claim with the receiver for the deposit.

A story was written in the Detroit newspapers about this deposit which Margaret McDonald, daughter of Ellen McDonald, read and she notified the receiver it belonged to her mother, who had died January 3, 1930. Appellee Charles R. Robertson was appointed special administrator of her estate and filed claim with the receiver alleging that appellant had embezzled the money from Ellen McDonald while employed by her and that the deposit belonged to her estate.

Appellant instituted this action at law against appellee Schram, receiver, seeking to recover the deposit, and appellee Robertson, special administrator, intervened. At the conclusion of the trial and at the court's suggestion, Robertson made a motion that the case be transferred to equity which was sustained on his filing a substituted bill of complaint.

The lower court treated the case as one in equity. No complaint is made on that account and we shall so consider the record on appeal.

Prior to 1881 Ellen McDonald operated a hotel, saloon and poolroom at Harrisville, Michigan, and lived there with her three children, John A. and Margaret McDonald and Flora M. Surtman, nee McDonald. In 1881, Ellen McDonald employed appellant, Hugh J. McDonald, to manage the hotel poolroom and barroom, at a salary of $40 per month, and board and lodging, which employment continued for approximately ten years. He had custody of the receipts of the business, paid the bills and purchased all of the supplies in Detroit. She had charge of the kitchen and the rooms.

Appellant began working in the lumber camps around Saginaw, Michigan, at ten years of age and, for several years before his employment by Ellen McDonald, was earning from $40 to $45 a month including his board and lodging. In his youth, he had inherited approximately $1,000 from his uncle and before and during the time of his employment at the hotel was lending money in small sums at 7% interest.

He left the employment of Ellen McDonald to operate his own boarding house and saloon at Mud Lake and a saloon at Au Sable, a short distance from Harrisville, and lived at one or the other of these places until at least 1916, possibly longer.

He then moved to a farm near Mud Lake and later to Dalhousie Mills, Ontario, Canada, where he has since resided.

In the lower court appellee proceeded on the legal principle that a fiduciary relationship existed between appellant, Hugh J. McDonald, and his employer, Ellen McDonald, and that by reason thereof, equity would presume fraud and the abuse of confidence and place the burden of proving good faith and fairness upon appellant, and that since appellee proved that McDonald kept no accounts of the moneys received and disbursed by him as manager of the hotel and made no settlement with his em-

ployer, and proved no ·source of income other than salary as hotel manager, which was insufficient to create the bank deposit, the burden rested on him to prove it was not taken from his employer. The lower court sustained this position and held the defendant had not sustained the burden of proof. The court also held the defense of laches unavailing.

In some cases, presumptive evidence is of weight that a person is guilty of fraud although there is no express proof of the fact of its commission, and when a fiduciary relationship exists, presumptions become of greater weight. Jacox v. Jacox, 40 Mich. 473, 29 Am.Rep. 547; Howard v. Howe, 7 Cir., 61 F.2d 577.

This principle is tempered by another, that generally speaking, the presumption is in favor of good faith, honesty and fair dealing. Fraud usually is clothed in secrecy and deceit and its existence in many cases can be deduced only from circumstantial evidence. Webber v. Jackson, 79 Mich. 175, 44 N.W. 591, 19 Am.St.Rep. 165; Kempner v. Churchill, 8 Wall. 362, 75 U.S. 362, 369, 19 L.Ed. 461. Assuming, but not deciding, that a fiduciary relationship existed between appellant and his employer, there is no substantial evidence in the record that he betrayed his trust.

Appellant is a very old man and at the trial believed he was over one hundred years of age. He had a faulty memory but testified positively on both direct and cross-examinations that all receipts of the business of which he was manager were turned over to its owner less current accounts payable and whatever money he put in his bank account was his own. He testified that after he moved to Canada, all of his records were destroyed in a fire which burned his home.

Isabelle McDonald, who was not related to the parties, testified she worked at Ellen McDonald's hotel from 1875 to 1878 and Sandy McDonald was its manager, that he rendered monthly accounts to Ellen McDonald and that the hotel was free of debt.

Margaret McDonald, daughter of Ellen, testified she was six years old when appellant became manager of her mother's hotel and that during the first few years of his employment there was no controversy between them as to the management of the hotel or disposition of its receipts, but that later appellant took the money, put it in his pocket or in a trunk in his room and when her mother would send her or one of her sisters to him for money, he would refuse to give it to them. She also testified that appellant gave up the management of his own free will and that he and her mother had no controversy, but he left because her brother claimed appellant had injured his dog and that appellant "went on a spree," and never returned. She also testified her mother lived at Harrisville until 1913 and frequently went to Au Sable, where appellant lived.

Flora McDonald Surtman, another daughter of Ellen McDonald, testified she was four years old when appellant became her mother's hotel manager. She stated her mother sent her to appellant for money and he told her they did not have any and her mother cried about it. She also testified she saw appellant take money out of the till and put it in a little pouch or cloth, but did not know what became of it after that and that she saw money in appellant's trunk. She stated the hotel had no office or safe.

John A. McDonald, son of Ellen McDonald, testified he was nine years of age when appellant became manager of his mother's hotel and that his mother on numerous occasions sent him to appellant for money and sometimes he would let him have it, sometimes not; and after he had been at the hotel for two or three years, appellant's attitude towards his mother changed; that he did not turn the money over to her; that he saw him take it out of the till, put it in a bag and take it to his room. He said appellant kept no records of receipts and to the best of his knowledge made no accounting. He also stated that when appellant became manager, the business was free of debt and had an ample inventory and when he left there were no inventories and they owed $2,000.

He said there was no bank in Harrisville and that it was customary to take the money receipts of the hotel at night and put them in a safe place; that it was not the practice to pay the bills by check but by cash and out of the hotel receipts.

Alicia H. Butler testified she was at one time a resident of Harrisville between 1880 and 1895 and often ate at the hotel and that the patrons all paid their bills at the bar. She testified that appellant's attitude or treatment of Ellen McDonald was domineering and that on one occasion she heard him refuse to give her money.

Beatrice Hardigan Ware testified she was employed as a waitress at the hotel while appellant was manager and that he appeared to assume entire responsibility and treated Ellen McDonald like a servant. Several of the witnesses testified the hotel was well patronized.

George Chandler testified he was employed by appellant in his saloon in AuSable in 1904 and that twice in April of that year Ellen McDonald came to see appellant and that he heard her call him "cousin" and they were friendly.

On February 12, 1925, Ellen McDonald in a letter to C. J. McDonald at Harrisville, Michigan, written for her by her daughter, Margaret McDonald, inquired about taxes on her property and also asked about the health of appellant, saying she had heard he was not well and had been informed someone had to go to his house once a week to fix things for him.

The only evidence in the record relating to the bank account in question is that of James Coones, an employee of the receiver, who produced the Depositor's Signature Book, covering the period from September 4, 1882, to September 10, 1884. Appellant's name appeared without date, numbered 29,008, containing the information that he was 28 years of age, lived in Harrisville, Michigan, and was born in Canada.

The record shows that on October 18, 1898, there was a balance in appellant's savings account of $10,515.72. No information was contained in the records of the bank and no testimony available as to when this, or any other deposit, was made by appellant or whether there were any withdrawals from the account. No subsequent deposits were made but interest credits were entered each year to the account.

█ Evidence must amount to something of relevant consequence and of a substantial nature from which the fact in issue can be reasonably inferred. It does not consist of vague, uncertain, irrelevant matter, not carrying the quality of proof to induce conviction.

When the evidence here is analyzed, we find no curious coincidences in the bank deposits with the activities of appellant as manager of the hotel. The vagueness of it makes it no more than a case of imagination. So far as the evidence shows, substantially all of the deposit may have been made after appellant left the employment of Ellen McDonald. He worked with and for her and under her direct and daily observation. The record shows she was a woman of intelligence and business acumen, and there is no evidence contradicting appellant that he turned over to her all of the gross receipts of the business in excess of the bills.

The only testimony in the record of any dereliction on the part of appellant is that of the McDonald children, all of them infants of tender years, now testifying in their old age about facts which happened fifty years before. The uncontradicted evidence shows that appellant was industrious, had no family obligations, commenced work at ten years of age, lived frugally and had the means out of his earnings to create the balance in the savings account of which the earliest existence shown was seven years after leaving the employ of Ellen McDonald.

█ In relation to the claims against appellant, it appears that forty-three years were suffered to lapse before any complaint was made of the execution of his trust, if he occupied that relationship. Appellee assigns as a reason for this delay the secrecy of the bank account. This specious reasoning led the lower court to a plainly erroneous conclusion. Appellant was not employed to make bank deposits for Ellen McDonald. He had charge of the receipts of her business and under appellee's theory of the employment, he was to pay therefrom the expenses of the business and deliver the balance to her. A concealment relieving her of laches would have been one that misled her as to the receipts or disbursements of the business. If he had manipulated the receipts in such manner that she could not have discovered or lacked the obvious means of discovering his misdeeds, if any, laches would not be imputable to her. Knowledge of facts putting a person of ordinary prudence on inquiry is the equivalent of actual knowledge and if one has sufficient information to lead him to a fact, he is deemed to be conversant therewith and laches is chargeable to him if he fails to use the facts putting him on notice.

█ In the case here appellee's intestate was thoroughly familiar with her hotel business long before appellant became her manager and had a thorough knowledge of its gross receipts and expenses.

Her children's testimony ·that appellant openly refused to give her the receipts did not indicate concealment but its antithesis. This was defiance. After he left her employment, he lived in a nearby community for more than twenty-five years and there is not a scintilla of evidence in the record that she ever made any demand on him for an accounting. This delay under such circumstances by appellee's intestate cannot be accounted for except on the ground that appellant had altogether satisfied his obligation to his employer. We do not rest our judgment upon the presumption of payment for it is not merely in this or in analogy to the statute of limitations that a court of chancery refuses to lend its aid to stale demands. There must be conscience, good faith and reasonable diligence to call into action the powers of the court. In matters of account in many cases where the bar of the statute of limitations has not fallen, courts of equity refuse to interfere after a considerable lapse of time from a consideration of public policy and from the difficulty of doing justice when the original transactions have become obscure by time and the evidence lost. It certainly cannot be said that there was anything like reasonable diligence by appellee's intestate if she had any ground of complaint and at this distance of time when one of the parties concerned is dead and the other has reached the decrepit age of almost a century, we should hardly do justice between them if we required appellant to pay to the appellee the bank account in controversy when there is but a bare suspicion that it came from any source other than appellant's frugality, practiced throughout his life. Compare, Dowse v. Gaynor, 155 Mich. 38, 118 N.W. 615; Kingsland v. Roberts, 2 Paige 193; Foster v. Mansfield, 146 U.S. 88, 99, 13 S.Ct. 28, 36 L.Ed. 899; Halstead v. Grinnan, 152 U. S. 412, 425, 14 S.Ct. 641, 38 L.Ed. 495; Hemmick v. Standard Oil Company, 3 Cir., 91 F. 332; Childs v. Missouri K. & T. Railway Company; 8 Cir., 221 F. 219; Philippi v. Philippe, etc., 115 U.S. 151, 160, 5 S.Ct. 1181, 29 L.Ed. 336; Longe v. Kinney, 171 Mich. 312, 137 N.W. 119.

We are of the opinion, after careful examination of the evidence, that the finding of the trial court was due to a mistake apparent on the face of the record. The decree is reversed with the direction to dismiss appellees' intervening petition.