(A. R. D. 73)

Dominick Butti *v.* United States

Entry No. 774934, etc.

Second Division, Appellate Term

(Decided May 15, 1957)

*Brooks & Brooks* (*Jerome Vale* and *Thomas J. McKenna* of counsel) for the appellant.

*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster* and *Samuel D. Spector*, trial attorneys), for the appellee.

Before LAWRENCE, RAO, and FORD, Judges

FORD, Judge: This application for a review of the decision and judgment of the trial court, which was reported in 35 Cust. Ct. 404, Reap. Dec. 8480, filed under the provisions of title 28 U. S. C. section 2636 (a), covers the appeals for reappraisement listed in schedule "A," hereto attached and made a part hereof. The merchandise consists of accordions imported from Italy and was entered at various unit prices. These accordions were appraised at values higher than the entered values, on the basis of export value of *similar* merchandise. It is the contention of appellant that these accordions should be appraised on the basis of the foreign or export value of *such* merchandise at the invoiced and entered values.

At the trial of this case, appellant herein offered the testimony of one witness, and certain documentary evidence in the form of affidavits.

Appellant's witness testified that he had held the position of manager of the Ace Accordion Co. of New York, N. Y., since 1945; that he examined, in the presence of the customs officials and while these accordions were still in the custody of the Government, certain items of the merchandise contained in case 1–F–76; that the eight accordions which were in said case 1–F–76 were old models, somewhat obsolete in style, a condition that reduces the value of the accordions and renders them less salable; that the accordions he examined had many keys out of line; and that the bodies and cases of the instruments had discolorations imbedded in them.

The affidavit offered by appellant and marked collective exhibit 1 is in the following language:

Antonio Butti, being duly sworn, declares:

1. That he speaks and understands the English language;

2. That he has been in the business of making, repairing and selling accordions for over 40 years;

3. That in September 1948, he purchased the firm of Italfisa, located in Osimo-Stazione, Ancona, Italy;

4. That said purchase included the firm's building, equipment and a stock of approximately 260 old, damaged or unfinished accordions;

5. That seince [*sic*] September 1948, he has been the sole owner of Italfisa;

6. That during the months of October, November and December 1950, he sold from the stock he acquired at time of purchase of Italfisa, the followin [*sic*] accordions to Dominick Butti Accordion School & Repairs, 154 Park Row, New York, N. Y. at the prices shown alongside each type:

| | TYPE | No. SOLD | PRICE PER EACH |
|---|---|---|---|
| FISARMONICHE | 41/120/4/5/9/3 | 8 | $45. 00 |
| " | 41/120/4/5/13/5 | 8 | 45. 00 |
| " | 41/120/4/5/15/5 | 2 | 45. 00 |
| " | 41/120/3/5/2 | 4 | 35. 00 |
| " | 41/120/3/5/2/1 | 1 | 30. 00 |
| " | 41/120/4/5/5/1 | 2 | 40. 00 |
| " | 41/120/4/5/5/1 | 2 | 35. 00 |
| " | 41/120/4/5/15/1 | 1 | 45. 00 |
| " | 41/120/3/5/1 | 1 | 25. 00 |
| " | 25/24/2/4 | 3 | 12. 00 |
| " | 21/8 bassi | 3 | 10. 00 |

7. That the principal market in Italy for accordions during the period of these shipments was Castelfidardo, Ancona, Italy.

8. That from his knowledge of and experience in the accordion markets in Italy he knows that the price of accordions is not affected by the number purchased in the ordinary cours [sic] of trade.

9. That during the summer and fall of 1950 he freely offered for sale the shop-worn and damaged accordions, acquired at the time of purchase of Italfisa, in the market of Castelfidardo and in other markets in Italy for home consumption and for export to all countries, including the United States, at the prices shown above in paragraph 6 and that inclosed is a sworn statement from Vignoni Giovanni, one of the purchasers of such accordions.

10. That from his knowledge of and experience in the accordion markets of Italy he knows that no other similar shop-worn and damaged accordions similar to those mentioned above were offered for sale during the summer, fall and winter of 1950.

A consideration of the above testimony regarding the condition of the involved accordions, which testimony is not contradicted, makes it clear that the accordions with which we are dealing were, in their imported condition, somewhat obsolete in style, many keys were out of line, the instruments had discolorations imbedded in them, and that they were otherwise shopworn and damaged.

Appellee herein, before the trial court, offered in evidence a photostatic copy of what purports to be a copartnership agreement between Antonio Butti, the shipper herein, and Dominick Butti, the importer herein, which was marked defendant's exhibit A. This so-called agreement purports to provide for the joint operation and partnership operation of the business to be conducted at 154 Park Row, New York, N. Y., under the firm name and style of A. Butti & Son Accordion School, and for the making of reciprocal wills, disposing of the partnership assets. To this exhibit are attached what purport to be photostatic copies of the reciprocal wills.

Appellee's exhibit B consists of what purports to be a letter, bearing date of January 4, 1951, not addressed to any one, and is signed in ink "Antonio." Further reference to this exhibit will be made later herein.

Appellee's exhibit C is a copy of what purports to be a letter written by the importer to the exporter, offering to pay $75 for 120-bass accordions. This copy of letter bears in type the salutation "Dear Father" and is signed in type "Your loving son."

Appellee's collective exhibit D is a series of photostatic copies of what purport to be a series of letters from the importer to the exporter, and vice versa. In the letters from the father, the exporter, to the son, the importer, there appears to be an effort to try to convince the son that the father is not charging the son the full price of the accordions, and the son seems to be trying to convince the father that he is not getting the merchandise he orders, and that he, the son, is paying the father the full market price for all he ships to him. No evidence was offered by appellee in an effort to connect up the accordions referred to in this series of correspondence with the accordions before us.

In its brief filed herein, counsel for appellant states that, in presenting its appeal before the trial court, it contended:

a—that the accordions in issue were shop-worn and damaged.

b—that these shop-worn and damaged accordions had both a foreign value and an export value based on *such* merchandise.

c—that the freely-offered-for-sale prices of *such* shop-worn and damaged accordions both for home consumption and for export to the United States were those set forth in the affidavit of the sole owner of the shipping company, Italfisa, and

d—that since a foreign and an export value existed for *such* merchandise the appraiser by returning a value based on export value of *similar* merchandise, was making an appraisement that was erroneous as a matter of law under the principle enunciated in *United States* v. *Meadows Wye & Co., Inc.*, 15 C. C. A. 451, T. D. 42643.

With reference to appellant's first contention that the involved merchandise consisted of shopworn and damaged accordions, the trial court made the following finding:

(1) That the merchandise in question consists of accordions exported from Italy and entered at the port of New York.

As to the second contention of appellant, that the involved and shopworn and damaged accordions had both a foreign and an export value based on *such* merchandise, as distinguished from *similar* merchandise, the trial court found as follows:

(2) That the foreign exporter confines the sale of his merchandise for export to the United States to the plaintiff herein.

The trial court also held the above contention of appellant to be untenable on the ground:

(3) That the evidence relating to foreign value fails to establish the essential elements of the statutory definition of such value, as set forth in section 402 (c) of the Tariff Act of 1930, as amended.

It is appellant's contention before this division that the trial court's finding of fact that the merchandise in question consists of accordions exported from Italy and entered at the port of New York is insufficient as a matter of law, because it fails to specify that said accordions were shopworn and damaged; that the trial court's finding of fact that the foreign exporter confines the sale of his merchandise for export to the United States to the plaintiff herein was based upon an unwarranted inference drawn from completely irrelevant evidence, the admission of which, over objection by appellant, constitutes reversible error; and that the trial court's finding of fact that the evidence relating to foreign value fails to establish the essential elements of the statutory definition of such value, as set forth in section 402 (c) of the Tariff Act of 1930, as amended, results from its failure to give to the evidence of appellant the weight it commands, which failure also constitutes reversible error.

Counsel for appellant, in its brief filed herein, states its position regarding the agreement and reciprocal wills, as follows:

The government offered in evidence, as bearing upon said issue, a copy of an agreement involving management of real estate holdings and a musical instrument business allegedly entered into between the shipper and the appellant-importer on June 29, 1948, approximately two and one-half years prior to the dates of exportation here involved, to which copy were attached copies of what purport to be reciprocal wills of the parties to the alleged agreement. The government offered these papers in evidence to show that the shipper and the importer who are father and son, were partners in the importing business, that the son was to be in charge of the business during the father's absence from the United States and that the son was to forward to the father a definite sum of money per month. Objection was made by appellant-importer to the introduction of this matter in evidence on the ground that it was irrelevant to the issue before the court which, as set forth above, concerned the question of the freely-offered-for-sale price in Italy, of such or similar accordions, for consumption in Italy or for export to the United States. The trial court overruled the objection, admitted the papers in evidence and ordered them marked "Defendant's Exhibit A," despite the fact that the papers contained no reference either to the issue herein or to any of the four entries involved. It is to be noted that in addition to the absence of any reference in Defendant's Exhibit A to the issue here involved the signatures appearing therein have not been authenticated nor has there been any proof offered by defendant that such an agreement had been executed, that it had not been altered in the manner permitted by paragraph 8 thereof and that it had actually been in effect in unaltered form on or about the dates of exportation herein, October 28, November 9, November 26 and December 30, 1950. Proof of these matters becomes essential in the absence of any statutory privilege similar to that extended special agents reports, etc., in 28 U. S. C., Sec. 2633.

Appellee's exhibit B consists of a typewritten paper, dated January 4, 1951, described by the Government as a "letter," although it contains no salutation, in which the shipper refers to a multitude of matters, among which is a shipment forwarded by him on November

26, presumably the year 1950, although there is nothing to indicate the year the so-called letter was written, consisting of 125 pairs of straps, at $2 each, 14 accordions at $15 each, and 3 sample accordions at 120 basses for more than $200. An examination of the invoices and entry papers before us shows that the only shipment involved in this proceeding which was made on November 26, 1950, did not involve 17 accordions, did not involve any accordions valued at $15 each, and did not involve any accordion straps.

Although the above exhibit was duly objected to, when offered, on the ground of irrelevancy, it was, nevertheless, admitted in evidence and formed a part of the body of evidence which the trial court held established that the shipper in Italy:

* * * sold exclusively to the plaintiff herein, at special prices, and without any attempt to meet the statutory requirements governing the valuation of imported merchandise. * * *

Appellee's exhibit C purports to be a copy of a letter, which bears the salutation "Dear Father" and the conclusion "Your loving son." This piece of paper is not signed by anyone, and, so far as we have been able to discover, contains nothing to connect it with the exporter or importer herein, or with the proper dutiable value of any of the four shipments of accordions herein. Moreover, this piece of paper is dated more than 1 year subsequent to the date of the latest shipment before us.

Appellee's collective exhibit D consists of 32 photostatic copies of what the Government has referred to as "correspondence." No proper foundation was laid for the introduction of said collective exhibit D in evidence. Nor was sufficient evidence offered to connect it with the merchandise or with the issue in this case. Despite objection at the trial that said collective exhibit D was wholly irrelevant to the issue being litigated, the trial court admitted it in evidence and accepted it as establishing that:

* * * in all the transactions relating to the exportation of accordions to the United States, the foreign exporter, Italfisa, sold exclusively to the plaintiff herein, at special prices, and without any attempt to meet the statutory requirements governing the valuation of imported merchandise.

An examination of the exhibits offered by the appellee herein in the nature of unauthenticated and unconnected so-called correspondence discloses nothing which could be construed as sufficient to establish that the Italian exporter sold and/or offered for sale shopworn and damaged accordions, such and/or similar to those here involved, to the appellant herein exclusively.

In *McDonald* v. *Robertson*, 104 F. 2d 945, the Circuit Court of Appeals for the Sixth Circuit, in commenting upon what constituted evidence, observed:

Evidence must amount to something of relevant consequence and of a substantial nature from which the fact in issue can be reasonably inferred. It does not consist of vague, uncertain, irrelevant matter, not carrying the quality of proof to induce conviction.

We agree with the following statement in appellant's brief:

Admission in evidence of such irrelevant documentary matter as that in defendant's exhibits A, B, C and D and reliance thereon by the court in making the finding of fact:

> (2) That the foreign exporter confines the sale of his merchandise for export to the United States to the plaintiff herein.

constitutes such prejudice to appellant-importer's case as to require a reversal of the judgment of the trial court and a remand for findings of fact based only upon the relevant evidence of record.

On the question of the foreign value of the involved merchandise, the trial court made the following finding:

\* \* \* On the matter of foreign value, as such value is defined in section 402 (c) of the Tariff Act of 1930, as amended, I find that plaintiff's proof falls far short of meeting the requirements of the statute. This phase of plaintiff's evidence is confined to the two affidavits (exhibits 1 and 2, *supra*), hereinabove reviewed in detail. While it is recognized that the method of offering evidence by means of affidavits is a right conferred by statute (U. S. C. § 2633), it must be borne in mind that the introduction of evidence through an affidavit does not "affect the substantive issue of whether the statements therein appearing constitute substantial evidence of the ultimate facts sought to be proved thereby." *Kobe Import Co.* v. *United States*, 42 C. C. P. A. (Customs) 194, C. A. D. 593, citing with approval *Brooks Paper Company* v. *United States*, 40 C. C. P. A. (Customs) 38, C. A. D. 495. \* \* \*

The *Kobe Import* case, *supra*, is entirely different from the present case. While it is true that the *Kobe* case and the present case involve damaged and shopworn merchandise, there was no evidence in the *Kobe* case as to the value of the chatons there in issue, other than the testimony of witnesses that the importer actually paid the prices shown on the invoices. The distinction between the two cases is made clear by the following from the *Kobe* case, *supra*:

In its efforts to prove the appraiser's action to be erroneous, appellant argued below, as it does now, that a price or market value differential existed between regular chatons in commercial assortments and damaged job lots of such chatons in broken assortments; that the unbalanced assortments and quality of the imported merchandise rendered it less valuable than the regular chatons; that nevertheless the appraised values for the instant merchandise were not only higher than the entered values, but were also higher than those values found by the appraiser for the prior shipment of regular merchandise upon which he based the appraisement in issue; and that the appraiser was therefore in error in finding a statutory export value for the involved chatons predicated on values found for such regular chatons. Referring to the aforementioned correspondence between shipper and importer (which, as exhibits in this case, we have examined), appellant states (and we think correctly) that such correspondence could not have provided any foundation for the appraiser's valuation since it related to many different phases of appellant's business, and to the several classes of mer-

chandise in which it was interested, and did not with any degree of particularity identify any of the instant shipments.

However erroneous the appraiser's action may have been in valuing the merchandise, it was incumbent upon appellant seeking to prove the correctness of a different statutory export value to meet every material issue in the case, and hence establish every element of that value in strict compliance with the dictates of section 402 (d), *supra*. Failing to sustain this burden of proof, the value fixed by the appraiser remains in full force and effect.

As indicated, appellant contends that the prices shown on the consular invoices represent the correct export and dutiable value of the imported goods. Witnesses appearing at the trial on behalf of appellant testified without contradiction that these prices were those actually paid for the merchandise. The affidavit of Chen, appellant's buying and shipping agent, was also received in evidence in support of appellant's position. The lower court, in affirming the judgment of the trial judge sustaining the appraiser's valuation, reviewed the evidence in the case, considered appellant's arguments with respect thereto, and concluded as follows:

> Should we accept as correct the contention of counsel for appellant that the proper dutiable value of merchandise is the price actually paid by the purchaser, this would render meaningless most, if not all, the provisions of section 402 of the Tariff Act of 1930. This we decline to do.

> While it is true that the evidence indicates that these chatons were purchased as job lots, and the record establishes that they were in a damaged condition, and in broken or non-commercial assortments, yet it is equally true that the evidence fails to establish any price at which job lots, damaged chatons, and chatons in broken or non-commercial assortments, or merchandise similar thereto, was freely offered for sale to all purchasers in the principal markets of China, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States. This being true, it is clear that appellant has failed to meet by proof the material issue in this case.

We agree with the court below that appellant has not shown, by sufficiently competent evidence, the existence of a statutory export value different from that found by the appraiser. * * *

In the instant case, we have uncontradicted evidence of the price at which the merchandise was offered for sale, in accordance with the stipulations laid down in section 402 of the Tariff Act of 1930. The above quotation from the *Kobe* case makes it clear that such was not the case there. We, therefore, fail to see how the *Kobe* case in any way supports the conclusion of the trial court in this case.

In like manner, the *Brooks Paper* case, *supra*, is distinguishable from the present case and, therefore, lends no support to the conclusion of the trial court. The *Brooks Paper* case turned entirely upon whether or not an affiant could, in an affidavit, state the quantity which constituted a usual wholesale quantity, the appellate court holding that such a statement was not binding on the court as evidence. In the instant case, no question of a usual wholesale quantity is involved, the affiant stating that, from his knowledge of and experi-

ence in the accordion markets in Italy, he knows that the price of accordions is not affected by the number purchased in the ordinary course of trade.

Counsel for appellee criticizes appellant's collective exhibit 2 on several grounds. In view of the fact that this exhibit is only intended to augment and support collective exhibit 1, and since collective exhibit 1 is sufficient, in and of itself, it is not necessary to consider further the sufficiency of collective exhibit 2. If collective exhibit 2 be completely discarded, collective exhibit 1 makes a *prima facie* case in favor of appellant herein, even though it refers only to offers for sale. In *Robinson & Co.* v. *United States,* 13 Ct. Cust. Appls. 644, T. D. 41486, the Court of Customs Appeals held as follows, regarding offers for sale:

> If that section [referring to section 302 of the Antidumping Act of 1921] had provided that export value was the price at which merchandise was *sold* to all purchasers in the principal markets of the country from which exported, there might be some ground for saying that the appraisement was not made in accordance with law. Section 302 does not so provide, however, and clearly contemplates not only actual sales, but offers for sale freely made to all purchasers for export to the United States. Under the emergency tariff act mere offers for sale if made to all persons desiring to purchase goods for export to the United States were just as effective in making export value as sales actually made and concluded. In fact, section 302 seems to have been framed to meet just such transactions and agreements as those involved in this appeal, providing as it does, that United States import duties, costs, charges, and expenses incident to bringing the merchandise from the country of exportation to the place of delivery in the United States shall, when included in the price, be deducted therefrom to ascertain export value.

> If Congress intended that only sales passing title should be determinative of export value, it would have defined export value as the price at which merchandise was *sold* for export to the United States and left out of the "equation" the price at which such merchandise was freely offered for sale to all purchasers. * * *

Counsel for appellee offered no evidence whatsoever to contradict or overcome the plain statements of fact contained in collective exhibit 1.

It is apparent to us that the trial court discarded the only legal evidence, collective exhibit 1, as to the value of the involved, damaged, and shopworn accordions in favor of much irrelevant, unauthenticated, unconnected, and immaterial so-called correspondence. In this, we feel the trial court committed error. To the end that this case may be reconsidered by the trial court, in the light of the observations herein made, the decision and judgment of the trial court are reversed, and the case is remanded to the trial court for further consideration upon the record before it. Judgment will be rendered accordingly.