(Reap. Dec. 9015)

DOMINICK BUTTI *v.* UNITED STATES

Entry No. 774934, etc.

(Order dated October 30, 1957)

*Brooks & Brooks* (*Thomas J. McKenna* of counsel) for the plaintiff.
*George Cochran Doub,* Assistant Attorney General, (*Daniel I. Auster* and *Samuel D. Spector,* trial attorneys), for the defendant.

ORDER

OLIVER, Chief Judge: These four appeals for reappraisement, which were consolidated at the time of trial, relate to certain accordions exported from Italy during October, November, and December 1950 and entered at the port of New York.

The case has been the subject of my decision in *Dominick Butti* v. *United States*, 35 Cust. Ct. 404, Reap. Dec. 8480, wherein I held that "the evidence presented herein is insufficient to overcome the presumption of correctness which the statute (28 U. S. C. § 2633) attaches to the values found by the appraiser," and, accordingly, sustained the appraised values as being the statutory export values of the merchandise.

The case comes before me at this time on remand, *Same* v. *Same*, 38 Cust. Ct. 732, A. R. D. 73 (rehearing denied A. R. D. 80) for reconsideration "in the light of the observations" made by the division on review, and "for further consideration upon the record" before me.

The only part of the record, pertinent to my consideration of the case at this time, is defendant's evidence. A detailed outline of that evidence follows.

An "AGREEMENT" (defendant's exhibit A), entered into on June 29, 1948, between Antonio Butti, the foreign exporter, and Dominick Butti, the importer (plaintiff herein), shows that the Italian exporter is the father of the importer of the merchandise under consideration and that they were, at the time of the execution of the "AGREEMENT" (exhibit A, *supra*), "copartners in the musical instrument business at 154 Park Row, Manhattan, New York, under the trade name of A. Butti and Son Accordion School."

Other evidence offered by defendant consisted of a series of letters between the foreign exporter and the importer (defendant's exhibits B, C, and collective exhibit D). My decision, Reap. Dec. 8480, *supra*, summarized those exhibits as follows:

* * * The collection of letters can be aptly described as a chain of correspondence, discussing the problems and difficulties encountered by the exporter and the importer as dealers in accordions. The most important disclosure therefrom, so far as pertinent herein, is that, in all of the transactions relating to the exportation of accordions to the United States, the foreign exporter, Italfisa, sold exclusively to the plaintiff herein, at special prices, and without any attempt to meet the statutory requirements governing the valuation of imported merchandise. There is also some evidence (letter of January 4, 1951—part of defendant's collective exhibit D) showing that the accordions in question were new instruments, and not old and shopworn, as alleged by plaintiff.

The findings, as expressed in the foregoing quotation, were based not only on the general tenor of the collection of letters (defendant's exhibits B, C, and collective exhibit D), but also on specific admissions embodied therein and which are now set forth. The letter of January 4, 1951 (part of collective exhibit D), as it refers to the shipment covered by entry 825649 (reappraisement 207991–A) lends support to the statement that the accordions in question were new instruments. In that connection, the letter reads as follows:

* * * Regards to the shipment C. O. D. in custom house for'$325 for what you want new paper for, it is not necessary because in that one casse [*sic*] contains:

11 accordeons. One 20 registers, new with good reeds, wich [sic] I priced $75 it is not too much the accordeon cost me and to anybody $120; than [sic] 2 accordeons, four and five sets reeds, five shift one on the basses, also new, listing for $45 each. You should know those kind accordeons cost me twice much than I charge you; than [sic] I have one three and five sets reeds, four shift and one at bases "junior" model, listing $45; than [sic] one more small size 3 and 5 sets reeds, one shift only I listing $35; than [sic] 3 piano accordeons [sic] 24 basses and 25 keys 2 and 4 sets reeds, listing $15 each. All new accordeons [sic] very cip [sic]; than [sic] 3 new accordeons—semitono—21 keys and 8 basses for $15 each. You ask for the new paper and in that documents [sic] I take off $88 and the C. O. D. now will be $237. Do not forget, when you take out those accordeons to send me the difference because I know that you will be sactisfied [sic] whit [sic] it. * * *

The letter of April 3, 1951 (part of defendant's collective exhibit D), contains positive evidence showing that the foreign exporter's transactions were exclusively with the plaintiff herein. The letter, written by the father (the Italian exporter) to his son (plaintiff herein), includes the admission by the exporter that "I do not make business with nobody except you."

The division on review, referring to defendant's evidence, stated as follows:

An examination of the exhibits offered by the appellee herein in the nature of unauthenticated and unconnected so-called correspondence discloses nothing which could be construed as sufficient to establish that the Italian exporter sold and/or offered for sale shopworn and damaged accordions, such and/or similar to those here involved, to the appellant herein exclusively.

At this point, and in view of the division's characterization of the exhibits as "unauthenticated and unconnected so-called correspondence," it is important to review the record as it discloses Government counsel's offers of letters at the time of trial and the attitude of plaintiff's counsel in connection therewith.

In offering the letters (defendant's exhibits B and C), Government counsel stated that "They indicate a course of conduct between the father and son relating to the business." In objecting to their admission as evidence, counsel for plaintiff stated that "a hasty glance through each of these letters indicate they have no bearing whatsoever on the issue involved here."

Government counsel's offer of the collection of letters (defendant's collective exhibit D) appears in the record as follows:

MR. AUSTER: Now I want to offer as a collective exhibit, correspondence or photostat copies of correspondence which was turned over to the Customs Agent by Mr. McKenna in connection with their investigation of the four cases involved in this suit; as well as other importations by the same importer.

I want to say this to the Court that I find that Mr. McKenna fully cooperated personally with the Customs Agents in their investigation. [Discussion off the record.]

Plaintiff's counsel objected to the offer of the collective exhibit "as having no relevancy to the transaction."

I could not when this case was originally before me—and I cannot now—draw from the record herein that plaintiff questioned the authenticity of the series of letters from the exporter to the importer (exhibits B, C, and collective exhibit D, *supra*).

In view of the appellate division's characterization of the letters as "unauthenticated and unconnected," it is my opinion that these appeals for reappraisement should be restored to the calendar for clarification of the record, particularly with reference to the exhibits introduced by defendant.

It is so ORDERED.