(Reap. Dec. 9224)

RICO, INC. *v*. UNITED STATES

Entry No. 14133.

(Decided September 23, 1958)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Henry J. O'Neill* and *Samuel D. Spector*, trial attorneys), for the defendant.

MOLLISON, Judge: This is an appeal for reappraisement of the value of whole frozen strawberries, exported from Mexico on or about May 19, 1955. The parties have agreed that there was no foreign value, as defined by section 402 (c), Tariff Act of 1930, as amended, for such or similar merchandise, and that there was no export value,[1] as defined by section 402 (d) of the said act, for *such* merchandise.

The frozen strawberries in issue were appraised on the basis of export value of *similar* merchandise at Mexican pesos 2.75, less 18.36 per centum for nondutiable charges, per pound. Plaintiff contends that no export value or United States value (defined in section 402 (e) of the act) existed, and that the proper basis of value for the same was cost of production (defined in section 402 (f) of the act), and that such cost of production was Mexican pesos 1.625 per pound.

Plaintiff's claim with respect to the nonexistence of export value for similar merchandise is based upon the contention that the record shows (1) that in the principal markets of Mexico strawberries similar to those in issue were not freely offered for sale to all purchasers for exportation to the United States; or (2) that similar strawberries were sold at varying prices, and that there was no single price at which they were offered; or (3) that the requirement of obtaining a certificate of inspection by the United States Department of Agriculture constituted such a restriction upon the sale as would bar a

---

[1] SEC. 402. VALUE.

    \*       \*       \*       \*       \*       \*

    (d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

finding that the same were "freely offered" to purchasers for exportation to the United States.

The record establishes that the frozen strawberries at bar were packed as follows: Berries ⅝ of an inch in diameter or more, in 27-pound tins, and berries less than ⅝ of an inch, in 29-pound tins, all with 20 per centum sugar added. It appears that other packers in Mexico did not separately pack differently sized berries, but packed all sizes in 30-pound tins, with 20 per centum sugar added.

I am satisfied that the 30-pound tins of whole frozen strawberries packed by the other packers in Mexico were merchandise "similar" to that here involved within the meaning of the term "similar" as used in the valuation statute, and, from a reading of the brief filed on behalf of the plaintiff, that point does not appear to be in dispute.

Plaintiff contends that strawberries similar to those in issue were not freely offered for sale to "all purchasers" within the meaning of that term as used in the act, which would preclude a finding of export value for similar merchandise. This contention is based upon (1) evidence that similar strawberries were offered and sold only to the so-called "processing" trade and not to the buying public in general, (2) evidence that, despite solicitation of offers from other packers, the president of the plaintiff company and a food broker failed to receive a single offer of similar strawberries for exportation to the United States at or about the time of exportation of the merchandise at bar, and (3) evidence offered by the defendant which is claimed by the plaintiff to show varying prices and no single uniform price to all purchasers.

As to basis (1) above, the record clearly shows that in the principal markets of Mexico at the time of exportation of the merchandise at bar whole frozen strawberries packed in 30-pound tins were sold only to the processing trade, i. e., bulk users, such as manufacturers, bakers, and preservers, and that strawberries so packed were not designed for nor sold to the retail grocery trade. The record also shows that the bulk users above described were the only class of purchasers which, in the ordinary course of trade, would normally care to buy whole frozen strawberries packed in tins of such weight. As held by our appellate court in the case of *United States* v. *American Glanzstoff Corp.*, 24 C. C. P. A. (Customs) 35, T. D. 48308, the expression "all purchasers" means—

\* \* \* all of those who cared to buy such goods in such markets.

Under the circumstances of this case, it appears that all of those who cared to buy whole frozen strawberries packed in 30-pound tins in the principal markets of Mexico were those in the so-called "processing" trade, and, consequently, they constituted "all purchasers" within the meaning of the term as used in the valuation statute.

Plaintiff makes a further contention, however, based upon evidence in the record that the strawberries which have been found to be similar to those at bar were *per se* the same as the whole frozen strawberries which are packed in much smaller (i. e., 10 or 12 ounce) packages for the retail grocery trade.

The record does not show that there were any whole frozen strawberries packed by Mexican packers in packages sized for the retail grocery trade at or about the time of exportation of the merchandise in issue, and, indeed, what evidence there is on the point tends to establish that whole frozen strawberries were *not* so packed or offered for sale in the principal markets of Mexico in 1955.

Plaintiff, however, cites the decisions of our appellate court in the cases of *United States* v. *Arkell Safety Bag Co.*, 22 C. C. P. A. (Customs) 258, T. D. 47210, and *United States* v. *Woolworth Co. et al.*, 22 id. 184, T. D. 47126, as standing for the proposition, as stated in plaintiff's brief, "that it is merchandise which is appraised, not packing."

The *Arkell* decision related to a situation in which the merchandise under appraisement consisted of Kraft wrapping paper imported from Sweden in large, or so-called "jumbo," rolls. It appeared that identical paper, in small rolls, was sold for home consumption. In reaching its conclusion that the merchandise sold for home consumption in Sweden was similar, for tariff appraisement purposes, to the imported merchandise under appraisement, our appellate court found that the actual merchandise involved in the controversy was paper *per se*, and not *rolls* of paper, and pointed out as establishing that fact that the merchandise was bought and sold by weight (per kilo) and not by the roll.

The *Woolworth* decision is to the effect that so-called "dutiable charges" or "packing charges," i. e., the "costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States," which, if not included in the offered price, are required to be added thereto in ascertaining value under the provisions of the valuation statute, may not be *appraised*, but that the *actual amount* of such charges must be determined, and, where not included in the offered price of the merchandise, must be added to the *per se* value of the merchandise to arrive at the dutiable value thereof.

The foregoing decisions have relation to the situation which obtains when merchandise is offered for sale *per se* at a price not including the so-called "dutiable" or "packing" charges, or at a packed price which reflects the *per se* price. By its citation of those decisions, it is clear that it is plaintiff's position that what was offered for sale in Mexico was, not 30-pound tins of whole frozen strawberries, but whole frozen strawberries *per se*, and that whole frozen strawberries *per se* were not

freely offered for sale to all purchasers because there was no offer thereof to the retail grocery trade.

The plain facts, however, as shown by the record, are that whole frozen strawberries *per se* were not offered for sale in the Mexican market and that the only strawberries similar to those at bar which were actually offered for sale in the principal markets of Mexico at the time of exportation of the instant merchandise were those packed in 30-pound tins. They were offered only at a *packed* price, that is to say, at a price including all of the costs, charges, and expenses incident to placing them in condition, packed ready for shipment to the United States, and there is nothing to show that that price in any way reflected the price of whole frozen strawberries *per se* or packed in packages sized for the retail grocery trade.

I am, therefore, of the opinion that neither of the cited cases supports the plaintiff's contention, and that the contention is untenable.

Plaintiff contends, further, that merchandise similar to that at bar was not freely offered for sale to all purchasers in the processing trade, and, in support of this contention, offered the testimony of two witnesses, one the president of the plaintiff corporation and the other a food broker located in Chicago.

The testimony of the first of these witnesses is to the effect that, at the time here pertinent, none of the packers other than the exporter of the strawberries at bar offered him any frozen strawberries, although he was in Mexico and tried to buy strawberries there. The testimony of the food broker is to the effect that he solicited offers from seven or eight Mexican strawberry packers, but did not receive any affirmative replies. However, he was unable to give the names of any of the packers he had solicited, and, moreover, it appears that he was soliciting accounts to use his brokerage services rather than offers to sell strawberries.

I am of the opinion that the evidence on the point falls far short of establishing that strawberries similar to those at bar were not freely offered to all purchasers. The evidence as to the efforts by the president of the importing firm to purchase strawberries is very vague and indefinite. The efforts of the food broker seem to have been along the lines of securing the brokerage business of the sellers, rather than of purchasing strawberries.

Plaintiff further contends that evidence offered by the defendant establishes that the prices at which strawberries similar to those in issue were offered for sale varied to such an extent that there was no single price at which the strawberries were freely offered for sale to all purchasers.

Before passing upon this contention, it should be noted that, at the conclusion of the presentation of the plaintiff's case in chief, counsel for the defendant moved to dismiss the appeal for reappraisement here involved on the grounds that plaintiff had failed to prove that merchandise similar to that in issue was not freely offered for sale to all purchasers in the principal markets of Mexico, or that the cost of production value contended for was the correct value of the merchandise. The motion to dismiss was taken under advisement for disposition at the time the case was taken up on the merits.

Under the principles of the decision of our appellate court in the case of *United States* v. *Joseph Fischer et al.*, 32 C. C. P. A. (Customs) 62, C. A. D. 286, it is made clear that it is the court's duty, in all cases where such action is possible, to determine the value of the merchandise, rather than to dismiss appeals for reappraisement, even when a motion to dismiss has been made on behalf of the defendant based upon grounds of failure of proof. See also the decisions in this court in the cases of *F. W. Hagemann* v. *United States*, 21 Cust. Ct. 309, Reap. Dec. 7623; on remand in *Same* v. *Same*, 24 Cust. Ct. 587, Reap. Dec. 7815; and *Dominick Butti* v. *United States*, 35 Cust. Ct. 404, Reap. Dec. 8480 (reversed on other grounds in *Same* v. *Same*, 38 Cust. Ct. 732, A. R. D. 73). Under those authorities, the motion to dismiss will not lie and is, therefore, denied.

As has been stated, in this last contention with respect to the nonexistence of export value for similar merchandise, plaintiff relies upon evidence contained in reports and affidavits offered in evidence by the defendant and claimed by the plaintiff to establish the fact that whole frozen strawberries similar to those in issue were sold at such varying prices that no single price could be considered to be the price at which they were offered for sale under the terms of the export value statute.

In this connection, plaintiff specifically points out that the reports of a Treasury representative, received in evidence as defendant's exhibits C and D, relative to investigations carried out at the plants of two of the Mexican packers who packed whole frozen strawberries similar to those in issue and whose sales prices apparently formed the basis for the appraised value, show that the sellers did not issue pricelists and that "the export price of Mexican strawberries is based entirely on the U. S. strawberry production and that the Mexican seller has no alternative but to accept the prevailing price in the U. S."

Plaintiff's position seems to be that these facts tend to establish that there was no uniform price at which the merchandise was offered for sale for exportation to the United States, but it has not developed the matter, either by way of argument or citation of authority. I am unable to see why prices may not be uniform in the absence of price-

lists, and there is nothing to show that the "prevailing price in the U. S.," to which the Mexican export price was tied, fluctuated to such an extent as to warrant a finding of a lack of uniform price.

Plaintiff correctly points out that the evidence offered by the defendant showed that the price varied *during the year 1955* from United States $0.22 to $0.24 per pound, f. o. b. Laredo, but the same evidence shows that at or about the time of exportation of the involved merchandise, May 19, 1955, the price was steady at United States $0.22 per pound, f. o. b. Laredo. The seeming single exception shows up in an affidavit of a domestic purchaser of Mexican whole frozen strawberries, received in evidence as defendant's exhibit P, wherein a purchase exported under a consular invoice, dated May 16, 1955, is shown to have been made at a price of United States $0.185 per pound, f. o. b. Laredo.

Although the affiant in defendant's exhibit P described the merchandise involved in the purchases therein listed as "strawberries, fresh, whole, frozen, with 20% sugar added," the listing of the purchase under the consular invoice of May 16, 1955, at a price of United States $0.185, f. o. b. Laredo, per pound, apparently has reference to a purchase of *crushed* frozen strawberries and not *whole* frozen strawberries. The same transaction, identified as a sale of crushed frozen strawberries, is referred to in defendant's exhibit E, the report of a Treasury representative with respect to an investigation conducted at the offices of the packer and seller of the crushed strawberries referred to.

I am of the opinion that plaintiff has failed to establish that at or about the time of exportation of the merchandise in question there was no uniform price at which similar merchandise was freely offered for sale. I note that the price which seems to have applied in the sale of the merchandise was a price in United States currency, f. o. b. Laredo, while the appraised value is a price in Mexican pesos, presumably in the principal markets of Mexico. Plaintiff has not, however, made any issue with respect to the question of the equivalency of the prices in the different currencies, or the correctness of the percentage deduction of nondutiable charges as shown in the appraised value.

Plaintiff's final contention with respect to the claimed lack of export value for similar merchandise is based upon the fact that the evidence offered by the defendant shows that sales of whole frozen strawberries in Mexico was "contingent upon obtaining a certificate of inspection from the Department of Agriculture and U. S. importers do not wish to run the hazard of ordering the merchandise and later find[ing] that the strawberries do not meet the requirements of the said Department" (defendant's exhibit C).

Plaintiff contends that the foregoing requirement "is a contingency which prevents the strawberries from being 'freely offered' to import-

ers in the United States." This contention is not supported either by argument or the citation of authority. It seems to be clear that the requirement that a United States Department of Agriculture certificate of inspection be obtained before a sale of imported Mexican strawberries would be considered binding upon the purchaser was one which obtained in the ordinary course of trade in the offer and sale of frozen strawberries in Mexico for exportation to the United States. I am unable to find that such a requirement constituted such a restriction upon the free offer of the merchandise for sale as would bar the existence of export value.

For the foregoing reasons, I find that plaintiff has failed to establish that, at or about the time of exportation of the merchandise at bar, merchandise similar thereto was not freely offered for sale to all purchasers in the principal markets of Mexico under the terms and circumstances set forth in the export value statute. It, therefore, follows that plaintiff has failed to overcome the statutory presumption of correctness of the appraised value (28 U. S. C. 2633).

Upon the entire record before me, I find as facts:

(1) That the merchandise involved consists of whole frozen strawberries, packed in 27- and 29-pound tins, exported from Mexico on or about May 19, 1955.

(2) That, at or about the time of exportation of the involved merchandise, neither such or similar merchandise was freely offered for sale to all purchasers for home consumption in Mexico.

(3) That, at or about the time of exportation of the involved merchandise, such merchandise was not freely offered for sale in Mexico to all purchasers for exportation to the United States.

(4) That the merchandise involved was appraised on the basis of export value (defined in section 402 (d), Tariff Act of 1930) of similar merchandise, and that plaintiff has failed to disprove the correctness of the value returned by the appraiser.

I conclude as matter of law:

(1) That, by operation of the statutory presumption (28 U. S. C. § 2633), the correct value of the merchandise at bar is that returned by the appraiser.

Judgment will issue accordingly.