(Reap. Dec. 9416)

DOMINICK BUTTI *v.* UNITED STATES

Entry No. 774934, etc.

(Decided on remand [A.R.D. 73] May 8, 1959)

Brooks & Brooks (Thomas J. McKenna of counsel) for the plaintiff.

George Cochran Doub, Assistant Attorney General (Daniel I. Auster, trial attorney), for the defendant.

OLIVER, Chief Judge: These appeals for reappraisement have been limited to certain accordions imported from Italy. Of the four shipments in question, one was exported in October 1950 (reappraisement 207320–A), two were exported in November 1950 (reappraisements 207322–A and 207991–A), and the remaining one was exported in December 1950 (reappraisement 207321–A). The merchandise was entered at the invoice unit values, which were advanced by the appraiser.

Plaintiff contends that the accordions in question are "shopworn and damaged," that such merchandise has a foreign value and an export value, and that such statutory values therefor were the entered values. Defendant, on the other hand, contends that there is no foreign value for merchandise such as or similar to that in question, that the proper basis for appraisement of the present merchandise is export value, and that such statutory value is the appraised unit value of each of the several items in question.

The case has been the subject of much litigation. Dominick Butti v. United States, 35 Cust. Ct. 404, Reap. Dec. 8480; Dominick Butti v. United States, 38 Cust. Ct. 732, A.R.D. 73 (rehearing denied A.R.D. 80); Dominick Butti v. United States, 39 Cust. Ct. 687, Reap. Dec. 9015; Dominick Butti v. United States, 41 Cust. Ct. 499, Reap. Dec. 9198. An outline of the previous proceedings follows.

In my original decision, Reap. Dec. 8480, supra, I held that the combined proof of plaintiff and defendant was "insufficient to overcome the presumption of correctness which the statute (28 U.S.C. § 2633) attaches to the value found by the appraiser," and, accordingly, sustained the appraised values as being the statutory export values of the merchandise. The division on review, A.R.D. 73, supra, remanded the case, as stated in its judgment, "for further consideration, in the light of the observations" made in the decision, which included

a statement to the effect that defendant's evidence (defendant's exhibits B, C, and collective exhibit D) consisted of "much irrelevant, unauthenticated, unconnected, and immaterial so-called correspondence." When the case came before me pursuant to the appellate division's remand, I stressed the division's characterization of defendant's exhibits as "unauthenticated, unconnected" correspondence, and I stated that I could not draw from the record that plaintiff questioned the authenticity of the series of letters from the exporter to the importer and, therefore, ordered that "these appeals for reappraisement should be restored to the calendar for clarification of the record, particularly with reference to the exhibits introduced by defendant," Reap. Dec. 9015, *supra* (plaintiff's motion to cancel said order denied, Reap. Dec. 9198, *supra*).

At the hearing, following my order for clarification of the record, counsel for defendant called as a witness, Dominick Butti, the plaintiff, who appeared under subpoena. He identified all of defendant's exhibits (defendant's exhibits A, B, C, and collective exhibit D) as authentic documents or communications between plaintiff (importer) and his father (foreign exporter). The testimony of plaintiff is accepted as a clarification of the record to the extent of connecting up, with attendant relevancy, to the issues involved herein, all of the documentary evidence offered by defendant. The effect of this clarification is twofold. First, the evidence as originally introduced by both parties has now been authenticated and connected. Second, the record, as now clarified, supports the construction placed thereon when the case was before me in the first instance. The following review of the record adheres closely to my original outline of the evidence, Reap. Dec. 8480, *supra*, with additional details that specifically support factual findings.

Oral testimony on behalf of plaintiff was elicited from the manager of the Ace Accordion Co. of New York City. His testimony is limited to the accordions contained in case 1–F–76, covered by entry 825649 (reappraisement 207991–A), which he examined in the presence of customs officials and while the merchandise was still in customs custody. Referring particularly to the eight accordions that were in the said case 1–F–76, the witness stated that they were old models, somewhat obsolete in style, a condition that reduces the value of the instruments and renders them less salable. The witness further testified that the accordions he examined had many keys out of line and that the bodies and cases of the instruments had discoloration imbedded therein. The witness also explained the meaning of the various descriptive numbers appearing on the invoices to identify the different models or styles of accordions.

In an affidavit (plaintiff's collective exhibit 1), executed by Antonio Butti, the affiant testifies that he is the sole owner of Italfisa, the

exporter of the accordions in question, and that at the time of his purchase of Italfisa, in September 1948, he acquired a stock of "approximately 260 old, damaged or unfinished accordions." Affiant testifies further that, during the months of October, November, and December 1950, he sold to the Dominick Butti Accordion School & Repairs of New York City, from the stock he acquired at the time of his purchase of Italfisa, 35 accordions of different types that are set forth in a list embodied in the affidavit. The witness further testifies that "during the summer and fall of 1950 he freely offered for sale the shop-worn and damaged accordions, acquired at the time of purchase of Italfisa, in the market of Castelfidardo and in other markets in Italy for home consumption and for export to all countries, including the United States," at prices, the same as those shown for the different styles of accordions itemized in the affidavit, and that, from his knowledge of and experience in the accordion markets of Italy, he knows that no other shopworn and damaged accordions, similar to those identified in the affidavit, were "offered for sale during the summer, fall and winter of 1950." While the witness states that "he has been in the business of making, repairing and selling accordions for over 40 years," his admission that he did not purchase Italfisa until September 1948 reveals that he had had only about 2 years' experience in the markets of Italy prior to the shipments of the accordions involved herein.

Another affidavit offered on behalf of plaintiff (plaintiff's collective exhibit 2) is referred to in the affidavit just reviewed (exhibit 1, *supra*) as "a sworn statement from Vignoni Giovanni, one of the purchasers of such accordions," who states that "Upon the request of Mr. Antonio Butti, I * * * herewith declare that in the period from *June to December, 1949* [italics supplied], I purchased from the said Mr. Butti the following accordeons [*sic*]," itemized in a list embodied in the affidavit and showing 11 transactions, aggregating 96 accordions. It will be noted that affiant states that he was one of the purchasers of shopworn and damaged accordions acquired by the foreign exporter when he purchased Italfisa, and that the period of time mentioned, i.e., "from June to December, 1949," is 1 year earlier than the shipments in question and the alleged sales referred to in the affidavit of the foreign exporter (exhibit 1, *supra*).

Defendant's evidence, all of which is documentary, is a disclosure of the close relationship, as well as *the unusual course of business followed*, between the Italian exporter and the American importer of the accordions in question. An "AGREEMENT" (defendant's exhibit A), entered into on June 29, 1948, between Antonio Butti, hereinabove identified, and Dominick Butti, the plaintiff herein, shows that the Italian exporter is the father of the importer of the present merchandise, and that they were, at the time of the execution of the agreement, "copartners in the musical instrument business at 154 Park Row, Man-

hattan, New York, under the trade name of A. Butti and Son Accordion School." Attached to the agreement are photostats of reciprocal wills made by the parties to each other. Plaintiff testified that all of these documents were executed between him and his father in this country before his father left for Italy.

Defendant also offered in evidence a series of letters (defendant's exhibits B, C, and collective exhibit D) between the exporter and the importer, which reflect their status as partners in the accordion business. Plaintiff recognized all of the letters as authentic correspondence between himself and his father. Although each of these letters cannot be directly connected with the particular shipments under consideration, all of them are pertinent herein toward showing a course of business, between the exporter and the importer, that does not meet statutory requirements governing the appraisement of imported merchandise. My summary of these exhibits is repeated now, with the same force and effect as when it was set forth in my original decision, Reap. Dec. 8480, *supra*, as follows:

> * * * The collection of letters can be aptly described as a chain of correspondence, discussing the problems and difficulties encountered by the exporter and the importer as dealers in accordions. The most important disclosure therefrom, so far as pertinent herein, is that, in all of the transactions relating to the exportation of accordions to the United States, the foreign exporter, Italfisa, sold exclusively to the plaintiff herein, at special prices, and without any attempt to meet the statutory requirements governing the valuation of imported merchandise. There is also some evidence (letter of January 4, 1951—part of defendant's collective exhibit D) showing that *the accordions in question were new instruments, and not old and shopworn,* as alleged by plaintiff. [Italics supplied.]

The findings, as expressed in the foregoing quotation, are based not only on the general tenor of the collection of letters (defendant's exhibits B, C, and collective exhibit D), but also on specific admissions embodied therein and which are now set forth. The letter of January 4, 1951 (part of collective exhibit D), as it refers to the shipment covered by entry 825649 (reappraisement 207991–A) lends support to the statement that the accordions in question were new instruments. In that connection, the letter reads as follows:

> * * * Regards to the shipment C.O.D. in custom house for $325 for what you want new paper for, it is not necessary because in that one casse [*sic*] contains: 11 accordeons [*sic*]. One 20 registers, new with good reeds, wich [*sic*] I priced $75 it is not too much the accordeon cost me and to anybody $120; than [*sic*] 2 accordeons, four and five sets reeds, five shift one on the basses, *also new,* listing for $45 each. You should know those kind accordeons cost me twice much than I charge you; than [*sic*] I have one three and five sets reeds, four shift and one at basses "junior" model, listing $45; than [*sic*] one more small size 3 and 5 sets reeds, one shift only I listing $35; than [*sic*] 3 piano accordeons [*sic*] 24 basses and 25 keys 2 and 4 sets reeds, listing $15 each. *All new accordeons* [*sic*] very cip [*sic*]; than [*sic*] 3 *new accordeons*—semi-

tono—21 keys and 8 basses for $15 each. You ask for the new paper and in that documents [*sic*] I take off $88 and the C.O.D. now will be $237. Do not forget, when you take out those accordeons to send me the difference because I know that you will be sactisfied [*sic*] whit [*sic*] it. * * * [Italics supplied.]

It will be noted that the foregoing quotation includes admissions, showing that the foreign exporter sold these accordions to his son, the importer, at special prices, sometimes below the exporter's cost. Further evidence of the peculiar business methods followed between the father (foreign exporter) and his son (the importer) appears in a letter under date of March 15, 1951, sent by the son to his father and stating, in part, as follows:

* * * I received the papers for the new shipment of 12-bass accordions and concertinas, but I am sending the papers back to you because the prices must be changed a little higher and secondly because I am having a lot of trouble with the Custom House when you put down Merce tutti of Stock Usata. They claim that you are not telling the truth because they say they are all new stock. * * *

* * * Now there are of two things wrong. Either these accordions are costing you twice as much as you sell them to me or the money is being wasted in Italy somehow. Now if it true that these accordions are costing you twice as much to make as you give them to me for, it is not worth it for you to bother making for you can buy them cheaper and I am making a big mistake in the price I am selling them for for I do not know what price they really are costing me. * * * After all we are partners and in order to understand your problems there I must know everything going on. * * *

The letter of April 3, 1951, contains positive evidence showing that the foreign exporter's transactions were exclusively with the plaintiff herein. The letter, written by the father (the Italian exporter) to his son (plaintiff), includes the admission by the exporter that "I do not make business with nobody except you."

It should be emphasized, at this point, that the statute (28 U.S.C. § 2633) provides that "The value found by the appraiser shall be presumed to be the value of the merchandise" and that "The burden shall rest upon the party who challenges its correctness to prove otherwise." Inherent in the statutory presumption of correctness that is attached to the appraiser's action is the existence of every fact that is necessary to sustain the appraised value. *Transatlantic Shipping Co., Inc. (Absorbo Beer Pad Co., Inc.) v. United States,* 28 C.C.P.A. (Customs) 19, C.A.D. 118; *E. I. du Pont de Nemours & Co. v. United States,* 27 C.C.P.A. (Customs) 146, C.A.D. 75. The burden imposed upon the plaintiff in a reappraisement case was set forth in *United States v. Malhame & Co.,* 19 C.C.P.A. (Customs) 164, T.D. 45276, as follows:

The issue is not whether the value returned by the appraiser is the proper dutiable value of the merchandise, but whether there is (a) a foreign value or/and (b) an export value, and, if both, which is the higher, and the importer, having been the appealing party in the first instance, it was incumbent upon it

"to meet every material issue involved in the case." *Meadows, Wye & Co.* v. *United States, supra.* * * *

On the basis of the present record, plaintiff has failed to establish his claimed values as the proper values for appraisement of the merchandise in question. First of all, the record is not sufficiently clear to say that the articles in question are in fact shopworn and damaged accordions, as alleged by plaintiff. On the contrary, there is some evidence herein indicating that the shipments under consideration contained new accordions. A prominent defect in plaintiff's line of proof is its limitation to the business of Italfisa, the exporter of the accordions under consideration. There is evidence before me to the effect that there were other manufacturers of, or dealers in, accordions in the country of exportation of the present merchandise, at the time involved herein, but, on the basis of the present record, which is silent with respect to the business of any other manufacturers of or dealers in accordions, it cannot be presumed that the business of the foreign exporter of the merchandise in question is representative of that followed in the principal markets of Italy by other dealers in such or similar merchandise. *United States* v. *International Forwarding Co., Inc.*, 27 C.C.P.A. (Customs) 21, C.A.D. 56. The restriction exercised by the foreign exporter upon himself, by confining his sales for export to the United States to the plaintiff herein, is a bar for finding plaintiff's claimed values as the export values, within the statutory definition of export value, in section 402(d) of the Tariff Act of 1930. *United States* v. *Graham & Zenger, Inc.*, 31 C.C.P.A. (Customs) 131, C.A.D. 262.

For all of the reasons hereinabove set forth, I find that the evidence adduced herein is insufficient to overcome the presumption of correctness that is attached to the appraised values of the accordions in question.

On the basis of the record before me, I find as matter of fact:

(1) That the merchandise in question consists of accordions exported from Italy and entered at the port of New York.

(2) That the foreign exporter confines the sales of his merchandise for export to the United States to the plaintiff herein.

(3) That the evidence relating to foreign value fails to establish the essential elements of the statutory definition of such value, as set forth in section 402(c) of the Tariff Act of 1930, as amended.

Accordingly, I hold as matter of law:

(1) That the evidence presented herein is insufficient to overcome the presumption of correctness which the statute (28 U.S.C. § 2633) attaches to the values found by the appraiser.

(2) That the proper basis for appraisement of the accordions in question is export value, as defined in section 402(d) of the Tariff Act of 1930, and that such statutory values are the appraised values.

Plaintiff having abandoned these appeals for reappraisement as to all other merchandise, the appeals are dismissed as to all items, except the accordions.

Judgment will be rendered accordingly. '